# Case No.  2014-3337

## UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

### SHELDON STEPHENS,
Plaintiff-Appellant

### v.

### KEVIN CLASH,
Defendant-Appellee

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(Case No. 1:13-CV- 712)
District Judge:  Honorable Christopher C. Conner

## BRIEF OF PLAINTIFF-APPELLANT

HERMAN LAW
Jeff Herman, Esq.
Stuart S. Mermelstein, Esq.
3351 N.W. Boca Raton Boulevard
Boca Raton, Florida 33431
Tel:   305-931-2200
Fax:   305-931-0877
*Attorneys for Appellant Sheldon Stephens*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION.........................................................1

STATEMENT OF THE ISSUES..............................................................3

STATEMENT OF RELATED CASES AND PROCEEDINGS ............................4

STATEMENT OF THE CASE ..............................................................4

    A.  Nature of the Case ..............................................................4

    B.  The Course of Proceedings and Disposition Below ...................5

STATEMENT OF FACTS ....................................................................6

SUMMARY OF ARGUMENT ................................................................9

ARGUMENT .................................................................................11

  I.  THE STANDARD OF REVIEW FOR ALL ISSUES IN THIS APPEAL IS *DE NOVO*................................................................11

  II.  APPLICATION OF THE DISCOVERY RULE  GIVES RISE TO ISSUES OF FACT INSUSCEPTIBLE TO RESOLUTION ON A MOTION TO DISMISS .................................................13

    A.  There May Be Delayed Accrual of a Claim of Childhood Sexual Abuse Under the Discovery Rule.........................................15

    B.  The Discovery Rule In a Case of Child Sexual Abuse Requires Inquiry Into the Diverse and Hidden Symptoms of Child Sexual Abuse.......22

  III. PENNSYLVANIA'S "BORROWING" STATUTE ALLOWS APPLICATION OF PENNSYLVANIA'S TOLLING STATUTE FOR VICTIMS OF CHILD SEXUAL ABUSE ................................25

    A.  Applying Principles of Statutory Construction, Pennsylvania's "Borrowing" Statute Does Not Encompass Tolling Provisions ....................27

    B.  Other States Adopting the Same Language in their "Borrowing" Statutes Construe That Language to Exclude Tolling ...................30

    C.  Other Tenets of Statutory Construction Further Support a Construction of the "Borrowing" Statute that Excludes Tolling ...................34

    D.  Stephens States a Claim for Sexual Battery.............................38

CONCLUSION ..............................................................................39

CERTIFICATE OF SERVICE ..............................................................40

CERTIFICATION ...........................................................................41

# TABLE OF AUTHORITIES

## Cases

Ashcroft v. Iqbal, 556 U.S. 662, 120 S.Ct. 1937 (2009) ........................................13

Atcovitz v. Gulph Mills Tennis Club, 571 Pa. 580, 812 A.2d 1218 (2002)............30

Barefoot Architect, Inc. v. Bunge, 632 F.3d 822 (3d Cir. 2011).............................21

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007) .......................12

Commonwealth v. McCoy, 599 Pa. 599, 962 A.2d 1160 (2009) .................... 28, 34

Consolidated Grain & Barge Co., v. Structural Systems, Inc. 212 P.3d 1168
    (Okl. 2009) ..........................................................................................................31

Davis v. Grusemeyer, 996 F.2d 617 (3d Cir. 1993) ................................................19

Doe v. Boland, 698 F.3d 877 (6th Cir. 2012) ..........................................................17

Gabelli v. Securities and Exchange Comm'n, 133 S.Ct. 1216 (2013) ....................18

Gelman v. State Farm Mut. Auto Ins. Co., 583 F.3d 187 (3d Cir. 2009)................13

Gwaltney v. Stone, 387 Pa. Super 492, 564 A.2d 498 (1989).................................27

Kronisch v. United States, 150 F.3d 112 (2d Cir. 1998) .........................................16

Lake v. Arnold, 232 F.3d 360 (3d Cir. 2000) ..........................................................12

Matthews v. Kidder, Peabody & Co, 260 F.3d 239 (3d Cir. 2001).........................20

Mayer v. Belichick, 605 F.3d 223 (3d Cir. 2010).....................................................12

McKenna v. Ortho Pharmaceutical Corp., 622 F.2d 657, 659 (3d Cir. 1980) . 30, 36

McKinney v. Fairchild Int'l, Inc., 199 W.Va. 718, 487 S.E. 2d 913 (1997)...........31

Murphy v. Millennium Radio Group LLC, 650 F.3d 295 (3rd Cir. 2011).............28

Nelson v. County of Allegheny, 60 F.3d 1010 (3d Cir. 1995) ................................11

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008) ........................ 12, 13

Principal Life Ins. Co. v. DeRose, 2011 U.S. Dist LEXIS 114847 (M.D. Pa.
    2011)......................................................................................................................28

Ross v. Johns-Manville Corp., 766 F.2d 823 (3d Cir. 1985).......................... passim

S.M. v. Clash, 588 Fed. Appx. 44 (2d Cir. 2014)....................................................21

Schmidt v. Skolas, ___ F.3d ___, case no. 13-3750, 2014 U.S. App. LEXIS 19889 (3d Cir. October 17, 2014) ................................................................ passim

Sherfey v. Johnson & Johnson, 2014 U.S. Dist. LEXIS 79899 (E.D. Pa. 2014) ....25

Singleton v. Clash, 951 F.Supp 2d 578 (S.D.N.Y. 2013), aff'd S.M. v. Clash, 558 Fed. Appx. 44 (2d Cir. 2014) ................................................................4

Syed v. Hercules, Inc., 214 F.3d 155 (3d Cir. 2000) ...............................................12

United States v. Kubrick, 444 U.S. 111, 100 S.Ct. 352 (1979) ........................ 14, 15

Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481 (3d Cir. 1985)............19

White v. Mercury Marine Division of Brunswick, Inc., 129 F.3d 1428 (11th Cir. 1997) ................................................................................................15

William A. Graham Co. v. Haughty, 646 F.3d 138 (3d Cir. 2011) ........................29

Wilt v. Snack, 147 F.Supp. 700 (E.D. Pa. 1957) ....................................................36

## Statutes

1 Pa. C.S. §1921 .......................................................................................................28

1 Pa. C.S. §1927 .......................................................................................................35

18 U.S.C. §2255 ............................................................................................... passim

18 U.S.C. §2422 .....................................................................................................1, 9

18 U.S.C. §2423 .........................................................................................................1

28 U.S.C. §1291 .........................................................................................................2

28 U.S.C. §1331 .........................................................................................................1

28 U.S.C. §1332 .........................................................................................................1

42 Pa.C.S. §5521 ............................................................................................. passim

42 U.S.C. §1983 .......................................................................................................24

Child Abuse Victims' Rights Act of 1986, P.L. 88-500, October 18, 1986, 100 Stat. 1783.........................................................................................................14

Fed. R. App. P. 4(a)(1) ...............................................................................................2

Fed. R. Civ. P. 12(b)(6) ................................................................................... passim

iv

## Other Authorities

2002 Legislative Journal – House 1261 (June 11, 2002)........................................38

2002 Legislative Journal – Senate 1993 (remarks of June 25, 2002).....................38

David Lisak, The Psychological Impact of Sexual Abuse:  Content Analysis of
    Interviews with Male Survivors, 7 J. of Traumatic Stress 525 (1994)...............23

David Viens, Countdown to Injustice:  The Irrational Application of Criminal
    Statutes of Limitations to Sexual Offenses Against Children, 38 Suffolk U.L.
    Rev. 169, 176 (2004)...........................................................................................22

Elliot Nelson *et. al.*, Association Between Self-reported Childhood Sexual
    Abuse and Adverse Psychosocial Outcomes:  Results From a Twin Study,
    59 Archives of General Psychiatry, 139, 139-45 (2002)....................................23

RESTATEMENT (SECOND) OF CONFLICT OF LAWS §142 (1971) ........................ 33, 36

Uniform Conflict of Laws – Limitations Act of 1982, 12 U.L.A. 156 (2008)........35

Vernon, The Uniform Statute of Limitations on Foreign Claims Act: Tolling
    Problems, 12 Vanderbilt L. Rev. 971 (1959)......................................................34

## STATEMENT OF JURISDICTION

This action was brought by Plaintiff-Appellant Sheldon Stephens ("Stephens") in the District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. §1332, in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. (A: 42-43).[1] The Complaint alleges a claim for common law sexual battery, and also alleges federal claims pursuant to the civil remedy provision of 18 U.S.C. §2255(a) for violations of 18 U.S.C. §2422 and 2423.[2] (Id.)

This Court has jurisdiction over a timely appeal from two decisions of the district court. By Order and Memorandum dated November 18, 2013, the district court, in relevant part, granted with prejudice the motion to dismiss of Defendant-Appellee Kevin Clash ("Clash") as to Counts II and III of the Complaint. (A: 16-35). These Counts set forth Stephens' federal claims, for travel with intent to engage in illicit sexual conduct in violation of 18 U.S.C. §2423 (Count II), and coercion and enticement to sexual activity in violation of 18 U.S.C. §2422 (Count III).

On November 25, 2013, the district court entered a Stipulation and Order in which it was agreed that subject matter jurisdiction was present for the sole

---

[1] The Joint Appendix filed herewith is cited in this Brief as "(A: ___ )".

[2] There is also federal question jurisdiction of this case under 28 U.S.C. §1331.

remaining claim, Count I of the Complaint for sexual battery, pursuant to diversity jurisdiction, as well as a basis for the court to exercise supplemental jurisdiction over that claim.  (A: 49-50).  Pursuant to this Stipulation and Order, Stephens filed an Amended Complaint setting forth a single count of sexual battery under Pennsylvania law.  (Id., ¶ 4).

By Order and Memorandum dated June 19, 2014, the district court dismissed the sole count of the Amended Complaint with prejudice.  As a result, the court rendered a final decision dismissing all claims in their entirety as to all parties.  (A: 3-15).  A timely notice of appeal was thereafter filed by Stephens in accordance with 28 U.S.C. §1291 and Fed. R. App. P. 4(a)(1) on July 16, 2014.  (A: 1).

## STATEMENT OF THE ISSUES

1.      Whether the district court erred in dismissing pursuant to Fed. R. Civ. P. 12(b)(6) Stephens' federal claims under the Child Abuse Victims' Rights Act of 1986, 18 U.S.C. § 2255, on grounds of statute of limitations, based on its finding that his claims accrued under the discovery rule as a matter or law when the underlying criminal statutory violations occurred.[3]

2.      Whether Stephens states a claim for common law sexual battery which allows for application of Pennsylvania's tolling statute for victims of child sexual abuse, 42 Pa. C.S. §5533(b)(2), or whether such tolling is precluded under Pennsylvania's "borrowing" statute, 42 Pa. C.S. §5521(b), which provides for "borrowing" a foreign state's period of limitations.[4]

---

[3]      This issue was raised in opposition to Defendant Clash's motion to dismiss the Complaint (A: 38) (DE 19), and ruled upon by Order and Memorandum dated November 18, 2013.  (A: 16-35).

[4]      This issue was raised in opposition to Defendant Clash's motion to dismiss the Amended Complaint (A: 40) (DE 35), and ruled upon by Order and Memorandum dated June 19, 2014.  (A: 3-15).

3

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously.  Other victims alleging sexual misconduct by Defendant-Appellee Kevin Clash brought actions in the U.S. District Court for the Southern District of New York, which were dismissed on statute of limitations grounds.  See Singleton v. Clash, 951 F.Supp. 2d 578 (S.D.N.Y. 2013), aff'd, S.M. v. Clash, 558 Fed. Appx. 44, 2014 U.S. App. LEXIS 4377 (2d Cir. March 10, 2014).

## STATEMENT OF THE CASE

### A. Nature of the Case

The pleadings in this action allege the sexual predatory behavior of Clash beginning when Stephens was 16 years old.  (A. 43-45) (Complaint §§8 *et seq.*) Clash, an adult male born in 1960, is internationally known as the puppeteer and voice actor for children's programming, including the Elmo character on Sesame Street.  (A: 42-43) (Complaint §§2, 8).  Stephens, a resident of Pennsylvania, met Clash at a social networking event for models and actors.  (A: 43) (Complaint §10). Stephens alleges that Clash groomed him and then had him transported from Pennsylvania to New York for purposes of engaging him in illicit sexual activities. (A: 43-45) (Complaint §§11-18).

This appeal is from two Orders granting motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) .  These orders dismissed all of Stephens' claims based upon the

4

statute of limitations.  First, Stephens' federal claims pursuant to 18 U.S.C. §2255(a) were dismissed under the district court's application of the discovery rule for accrual of the statute of limitations.  Second, Stephens' claim for common law sexual battery was dismissed as a result of the district court's decision that Pennsylvania's tolling statute for claims of childhood sexual abuse, 42 Pa. C.S. §5533(b)(2), was inapplicable in this case under Pennsylvania's "borrowing" statute, 42 Pa. C.S. §5521.  Stephens appeals these decisions on the grounds that under the discovery rule and the childhood sexual abuse tolling statute, respectively, there is no basis to find Stephens' claims time barred at the pleading stage as a matter of law.

### B. The Course of Proceedings and Disposition Below

Stephens filed his original Complaint on March 18, 2013.  (A: 42).  Clash filed a motion to transfer, stay or dismiss the complaint.  By Order dated November 18, 2013, the district court deemed the motion to transfer or stay withdrawn, and granted the motion to dismiss with prejudice as to Counts II and III.  (A: 16).  Each of these Counts alleged federal claims pursuant to the civil remedy provision of 18 U.S.C. §2255(a).  (A: 46-47).  The district court did not at that time address Stephens' sexual battery claim in Count I of the Complaint, but instead raised the issue of subject matter jurisdiction in light of the district court's dismissal of the federal claims.  (A: 16) (Order, ¶ 3).  The district court shortly thereafter entered a Stipulation and Order which resolved this jurisdictional issue by finding that the district court had diversity

jurisdiction over the state law claim, as well as a basis for the exercise of supplemental jurisdiction. (A: 49-51). In the Stipulation and Order, the district court also granted Stephens leave to file an amended complaint as to his state law claim, and established a briefing schedule for Clash's motion to dismiss the state law claim. (Id.)

Stephens filed his Amended Complaint on December 2, 2013, which alleged a single count of common law sexual battery. (A: 52-57). Clash filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on statute of limitations grounds, which was granted with prejudice by Order and Memorandum of the district court dated June 19, 2014. (A: 3-15).

## STATEMENT OF FACTS

When Stephens was 16 years old he met Clash, a middle-aged adult male, at a social networking event for models and actors, where Clash offered to help Stephens with his acting career. (A: 43-44) (Complaint, ¶¶ 10-12).[5]   Clash began showering Stephens with attention and affection and then lured him to travel from his home in Pennsylvania to New York for the purpose of engaging him in sexual activities.  (A: 44) (¶¶ 13-14).  Toward this end, Clash "made arrangements by telephone to send chauffeurs from New York to pick [Stephens] up in Harrisburg,

---

[5] The factual allegations of the Amended Complaint (A: 52) are substantially identical.

6

Pennsylvania and transport him to Clash's apartment in New York." (A: 44) (¶ 13; see also ¶ 15 (alleging that Clash used a facility or means of interstate commerce to knowingly persuade, induce or entice Stephens into sexual activity when he was under 18 years of age)).

Once in New York, Clash had the minor Stephens engage in depraved sexual activities accompanied by drug use. (A: 43-44) (¶¶ 11-16). "Throughout the course of the underage sexual contacts, [Stephens] was a compliant victim unaware that Clash's activities were injurious or harmful." (A: 42) (¶ 3). The Complaint further alleges that Stephens did not discover, nor could he reasonably have been expected to discover, the connection between his injuries and Clash's sexual acts, until 2011:

> 17. Although CLASH's sexual activity with SHELDON began in or about 2004, when SHELDON was a minor Plaintiff, he was not immediately aware of his injuries. As a teenage boy, SHELDON was not emotionally or psychologically prepared for a sexual relationship with a grown man. As a compliant victim showered with attention and affection, SHELDON did not become aware that he had suffered adverse psychological and emotional effects from CLASH's sexual acts and conduct until 2011.
>
> 18. SHELDON did not become aware of his injuries, nor was he able to make a causal connection between his injuries and the sexual acts of CLASH until 2011. Given Plaintiff's compliance with the sexual relationship and the attention and affection CLASH gave him, SHELDON could not reasonably have been expected to know that he had been injured and that CLASH had caused his injuries at the time of their sexual contact.

7

(A: 45).   Nothing in the Complaint contradicts these allegations to indicate that Stephens may have earlier discovered his injuries and their causal relationship to his sexual contacts with Clash. (A: 42-48).

## SUMMARY OF ARGUMENT

Beginning when he was 16 years old, Stephens was a victim of childhood sexual abuse perpetrated by Clash, an adult male.  Clash groomed Stephens, gaining his trust, and then had Stephens transported from his home in Pennsylvania to New York City, where he engaged him in illicit and depraved sexual activities.  In his Complaint, Stephens brings federal claims for this abuse, alleging violations of 18 U.S.C. §§2422 and 2423 under the civil remedy provision of 18 U.S.C. §2255(a), and a common law claim for sexual battery.  The district court's dismissal of these claims on statute of limitations grounds pursuant to Fed. R. Civ. P. 12(b)(6) raises two distinct issues in this appeal.

First, the discovery rule for the statute of limitations applicable to Stephens' federal claims under 18 U.S.C. §2255(b) creates an issue of fact that is not susceptible to disposition as a matter of law on a motion to dismiss pursuant to Rule 12(b)(6).  Under the discovery rule, the statute of limitations does not accrue until the plaintiff has actual or constructive knowledge of his injury *and* the defendant's wrongdoing as its cause.  The allegations of the Complaint do not indicate that Stephens reasonably discovered his injuries and made the connection between those injuries and Clash's sexual abuse such as to bar his claims.

In a recent decision on pleading of the discovery rule, this Court reversed a dismissal pursuant to Fed. R. Civ. P. 12(b)(6), which is controlling here.  Schmidt v.

9

Skolas, ___ F.3d ___, case no. 13-3750, 2014 U.S. App. LEXIS 19889 (3d Cir. October 17, 2014). In <u>Schmidt</u>, the Court held that it was inappropriate to place the pleading burden on the plaintiff to establish facts in his complaint necessary to overcome a statute of limitations affirmative defense. <u>Id</u>. at 19. Only where the complaint explicitly reveals that the plaintiff had knowledge of his injuries and their cause outside the limitations period may it be appropriate to dismiss under the discovery rule. <u>Id</u>. at 21. That is not the case here; indeed, the Complaint expressly alleges that Stephens did not reasonably discover his injuries and their cause as Clash's sexual abuse until 2011, within the limitations period.

The district court nonetheless determined as a matter of law that Stephens' federal claims accrued when the statutory violations occurred, thereby neutralizing and rendering meaningless the discovery rule under 18 US.C. §2255(b). This determination was misguided, especially when considering the pernicious effects of childhood sexual abuse and the difficulties victims have when acting reasonably in addressing the diverse symptoms of abuse and their delay in associating them with the sexual acts of the perpetrator. Accordingly, there is in this case an issue of fact precluding dismissal as to delayed accrual of the statute of limitations under the discovery rule.

Second, Stephens' claim or sexual battery under Pennsylvania law is timely when Pennsylvania's tolling provision for claims of childhood sexual abuse, 42 Pa.

10

C.S. §5533(b)(2), is applied.   The district court, however, held that this tolling provision was inapplicable under the statute of limitations "borrowing" statute, 42 Pa. C.S. §5521(b).  According to the district court, this statute required application of New York tolling and accrual rules, along with its period of limitation.   In so holding, the district court failed to consider the plain meaning of the language of Section 5521(b), and failed to apply established principles of statutory construction. An analysis of those principles demonstrates that the "borrowing" statute does not encompass tolling rules and therefore does not foreclose application of Pennsylvania's childhood sexual abuse tolling statute in this case.  That statute was intended for the protection of the rights of Pennsylvania residents who were victims of childhood sexual abuse, like Stephens.  Accordingly, the district court in error dismissed Stephens' sexual battery claim under the statute of limitations.

## **ARGUMENT**

### I.    **THE STANDARD OF REVIEW FOR ALL ISSUES IN THIS APPEAL IS *DE NOVO***

The district court's dismissal of a Complaint requires plenary, *de novo*, review.  Nelson v. County of Allegheny, 60 F.3d 1010, 1012 (3d Cir. 1995).    In this case, the district court dismissed pursuant to Fed. R. Civ. P. 12(b)(6) all of Stephens' claims on statute of limitation grounds.  This Court has stated that "[w]e exercise plenary review of the District Court's dismissal of the [plaintiffs'] claim on

11

statute of limitations grounds under Fed. R. Civ. P. 12(b)(6)." <u>Lake v. Arnold</u>, 232

F.3d 360, 365 (3d Cir. 2000); <u>accord</u> <u>Syed v. Hercules, Inc.</u>, 214 F.3d 155, 158 n. *2

(3d Cir. 2000) ("[w]e exercise plenary review of the District Court's choice of the

applicable statue of limitations"); <u>accord</u> <u>Lake</u>, 232 F.3d at 364.  This plenary review

of a dismissal on grounds of statute of limitations includes "the district court's choice

and interpretation of applicable tolling principles. . . ."  <u>Nelson</u>, 60 F.3d at 1012.

Additionally, the Court's "review of the construction of Pennsylvania law is *de*

*novo*."  <u>Nelson</u>, 60 F.3d at 1012.

The standard for plenary review of a dismissal under Rule 12(b)(6) is well

established:

> We must accept all factual allegations in the complaint as
> true, construe the complaint in the light favorable to the
> plaintiff, and ultimately determine whether the plaintiff
> may be entitled to relief under any reasonable reading of
> the complaint.

<u>Mayer v. Belichick</u>, 605 F.3d 223, 229 (3d Cir. 2010).  "In order to withstand a

motion to dismiss, 'a complaint's factual allegations must be enough to raise a right

to relief above the speculative level.' " <u>Id</u>.  (quoting <u>Phillips v. County of Allegheny</u>,

515 F.3d 224, 230 (3d Cir. 2008) and <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,

555, 127 S.Ct. 1955 (2007)).  In this regard, "[t]he pleading must contain sufficient

factual allegations so as to state a facially plausible claim for relief. . . .  A claim

possesses such plausibility 'when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " Id. at 230 (quoting Gelman v. State Farm Mut. Auto Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) and Ashcroft v. Iqbal, 556 U.S. 662, 120 S.Ct. 1937, 1949 (2009)) (internal quotations omitted).

Applying these principles in the instant case under a plenary review, the statute of limitations is not a basis to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) any of Stephens' claims. The discovery rule for application of the statute of limitations gives rise to an issue of fact as to Stephens' federal claims under 18 U.S.C. §2255, which cannot be disposed of on a motion to dismiss. Stephens' claim for common law sexual battery requires application of Pennsylvania's tolling statute for claims of child sexual abuse, which makes this claim timely. Accordingly, the district court dismissed Stephens' federal and state law claims in error, and its decisions must be reversed.

## II.    APPLICATION OF THE DISCOVERY RULE GIVES RISE TO ISSUES OF FACT INSUSCEPTIBLE TO RESOLUTION ON A MOTION TO DISMISS

Stephens brings this action, in part, under the civil remedy provision for certain criminal violations set forth in 18 U.S.C. § 2255(a). Under this statute, a person who, while a minor, suffers personal injury as a result of criminal acts in

violation of an enumerated statute, including 18 U.S.C. §§2422 and 2423,[6] has a remedy for actual damages, costs of suit and a reasonable attorney's fee. 18 U.S.C. § 2255(a). Actual damages are presumed under the statute to be not less than $150,000. Id. Section 2255(b) includes a statute of limitations for this civil remedy:

> (b) **Statute of limitations**. – Any action commenced under this section shall be barred unless the complaint is not filed within 6 years after the right of action first accrues…[7]

The language of §2255(b), "6 years after the right of action first accrues", provides for application of the discovery rule.[8] The district court applied the

---

[6]     Stephens' Complaint pled violations of (i) 18 U.S.C. §2423, proscribing the transport of a minor across state lines for the purpose of engaging in illicit sexual conduct (Count II); and (ii) 18 U.S.C. §2422, which is addressed to one who knowingly persuades, induces, entices or coerces a minor to engage in any sexual activity for which any person can be charged with a criminal offense. (Count III). (See A: 46-47).

[7]     The statute was amended in 2013 to extend the discovery period from 6 years to 10 years. P.L. 113-4, Title XII, Subtitle B, Part 1, §1212(a), 127 Stat. 143.

[8]     The district court in its decision assumed "*arguendo*" that the discovery rule is applicable to Stephens' claims under §2255. (A: 26). The language used in the statute makes clear Congress's intent to incorporate a discovery rule. Section 2255(b) was enacted as part of the original Child Abuse Victims' Rights Act of 1986, P.L. 88-500, October 18, 1986, 100 Stat. 1783. At the time it was enacted in 1986, there were at least two United States Supreme Court decisions that construed the language "…after the right of action [or claim] first accrues" in federal statutes of limitation for civil claims to require application of the discovery rule: Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018 (1949) (statute of limitations under the Federal Employers' Liability Act (FELA)) and United States v. Kubrick, 444 U.S. 111, 100 S.Ct. 352 (1979) (statute of limitations under Federal Tort Claims Act (FTCA)). Accordingly, this same language in §2255(b) demonstrates an intent to

14

discovery rule in this case as a matter of law to find Stephen's claims time barred,

holding that the limitation period accrued when the actionable conduct occurred:

"[T]he relevant inquiry for Section 2255 claims is not when a plaintiff discovered

subsequent harm, but rather when the plaintiff discovered that he was the

defendant's victim under the underlying criminal statutes."  (A: 27) (Memorandum,

p. 11).  In so holding, the district court, in error, eviscerates the discovery rule under

§2255(b) for all intents and purposes, precluding its application to delay accrual past

the date of the occurrence of the underlying criminal violation.[9]

### A. There May Be Delayed Accrual of a Claim of Childhood Sexual Abuse Under the Discovery Rule

Under the discovery rule, the statute of limitations does not necessarily begin

to run upon the violation of rights.  Rather, accrual depends on when the plaintiff

has actual or constructive knowledge of his injury and that the defendant's

wrongdoing was the cause:

> [W]here plaintiff would reasonably have had difficulty
> discerning the fact or cause of injury at the time it was
> inflicted, the so-called "diligence-discovery rule of
> accrual" applies.  Under this rule, accrual may be

---

incorporate the discovery rule.  In White v. Mercury Marine Division of Brunswick,
Inc., 129 F.3d 1428 (11th Cir. 1997), the Court construed Urie and Kubrick to define
the term "accrue" and to apply the discovery rule to the general maritime statute of
limitations.  The same reasoning in White applies to construe the term "accrue" in
§2255(b) to require application of the discovery rule.

[9]    Stephens does not dispute that absent delayed accrual under the discovery rule
his federal claims are not timely under 18 U.S.C. §2255(b).

15

> postponed until the plaintiff has or with reasonable
> diligence should have discovered the critical facts of both
> his injury and its cause.

Kronisch v. United States, 150 F.3d 112, 121 (2d Cir. 1998) (internal quotations, footnote omitted).   See also Bohus v. Beloff, 950 F.2d 919, 924 (3d Cir. 1991) (stating the discovery rule under Pennsylvania law, that the "statute of limitations begins to run as soon as the 'plaintiff knows or reasonably should have known, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct' ") (citation omitted).   As set forth in the Complaint, the facts and circumstances surrounding Kevin Clash's sexual relationship with Stephens rendered him unable to discern the facts or cause of injury during the course of their relationship.  (A: 45).

The fact that one is a "victim" of a criminal statute enumerated in §2255 does not make him aware of his injuries and its cause.  The district court relied upon Doe v. Boland, 698 F.3d 877 (6th Cir. 2012), which is inapposite.  In Boland, the defendant argued that, to recover under §2255, "plaintiffs must show two things – that they are 'victims' and that they suffered a 'personal injury' – suggesting that a plaintiff's 'personal injury' means more than showing he was a 'victim.' " Id. at 881 (emphasis original).  The Court rejected this argument: "Cast in this light, the statute's separate references to 'victim' and 'personal injury' show only that minor

16

victims may sue for injuries they incur later in life; the statute does not create one category of victims and another category of people who suffer personal injuries." Id. The issue raised in Boland did not concern the discovery rule, nor did the Boland Court appear to address or even contemplate the discovery rule in its opinion. The district court in the present case took the Boland analysis out of context in applying it to the discovery rule.[10] There is no basis in precedent or reason to hold that when one becomes a "victim" under §2255 he then as a matter of law knows he was injured for purposes of the discovery rule.

Particularly in this case – where Stephens was showered with affection before becoming a compliant victim of child sexual abuse and had no idea at the time of the underlying incidents that he was being abused - the purpose and function of the discovery rule is to delay accrual until the victim both subjectively and objectively discovers the critical facts of both his injury and its cause. The Supreme Court recently expressed the principles underlying the discovery rule as follows:

> The discovery rule exists in part to preserve the claims of victims who do not know they are injured and who reasonably do not inquire as to any injury. Usually when a private party is injured, he is immediately aware of that

---

[10]    The district court also relied upon Singleton v. Clash, 951 F.Supp. 2d 578 (S.D.N.Y. 2013), aff'd, S.M. v. Clash, 558 Fed. Appx. 44 (2d Cir. 2014), which was an action brought by another victim alleging childhood sexual abuse by Clash. Like the district court here, the court in Singleton also relied, inappropriately, on Doe v. Boland, 698 F.3d 877 (6th Cir. 2012), to reject the discovery rule in a claim under §2255. 951 F. Supp. at 588.

> injury and put on notice that his time to sue is running.
> ***But when the injury is self-concealing, private parties
> may be unaware that they have been harmed***.  Most of us
> do not live in a state of constant investigation; absent any
> reason to think we have been injured, we do not typically
> spend our days looking for evidence that we were lied to
> or defrauded.  And the law does not require that we do so.
> Instead, courts have developed the discovery rule,
> providing that the statute of limitations in fraud cases
> should typically begin to run only when the injury is or
> reasonably could have been discovered.

Gabelli v. Securities and Exchange Comm'n, 133 S.Ct. 1216, 1222 (2013) (emphasis

supplied).  While Gabelli concerned application of the discovery rule in a fraud case,

the same principles apply in the context of child sexual abuse and its pernicious

effects on the victim.  The injury in a case of child sexual abuse is "self-concealing",

such that the victims are unaware that they have been harmed.  See id.  That is exactly

what was pled by Stephens in this case.

The impropriety of dismissing claims pursuant to Rule 12(b)(6) under the

discovery accrual rule was addressed by this Court recently in Schmidt v. Skolas,

___ F.3d ___, case no. 13-3750, 2014 U.S. App. LEXIS 19889 (3d Cir. October 17,

2014).  There, the Court reversed the dismissal of a complaint in a securities case

alleging breach of fiduciary duty based on the discovery rule.  The plaintiff in that

case sought the benefit of the discovery rule, claiming that "he could not have been

aware of the insider nature of the sales or that the assets were sold for far below their

actual value until he learned the details of the sales, and certain subsequent market

18

events suggested to him that the assets were quite valuable." Id, at 6.  The district court rejected this point, holding as a matter of law that the plaintiff "had all the information he needed to file the suit" and was thus on inquiry notice outside the limitations period.  Id.  In reversing Schmidt, the Court held that it was error to render such a factual conclusion under the discovery rule to dismiss a complaint under Fed. R. Civ. P. 12(b)(6).  The Court first noted that application of the discovery rule presents a factual issue "best determined by the collective judgment, wisdom and experience of jurors.  Only where the facts are so clear that reasonable minds *cannot differ* may the commencement of the limitations period be determined as a matter of law."  Id. at 18 (quoting Crouse v. Cyclops Indus, 560 Pa. 394, 745 A.2d 606, 611 (Pa. 2000)) (emphasis original, internal quotations omitted).[11]  It then held that a dismissal based on the discovery rule improperly imposes a pleading burden on the plaintiff inconsistent with the Federal Rules of Civil Procedure:

---

[11]    It is the defendant's heavy burden at the pleading stage to establish facts pertinent to application of the discovery rule in its favor as a matter of law:

> We are mindful that the applicability of the statute of limitations usually implicates factual questions as to when plaintiff discovered or should have discovered the elements of the cause of action; accordingly, "defendants bear a heavy burden in seeking to establish as a matter of law that the challenged claims are barred."

Davis v. Grusemeyer, 996 F.2d 617, 622 n. 10 (3d Cir. 1993) (quoting Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481, 498 (3d Cir. 1985)).

> Generally, the plaintiff bears the burden of showing that the discovery rule tolls the statute of limitations. However, while a court may entertain a motion to dismiss on statute of limitations grounds, ***it may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense.*** This distinction comes to the fore here, where the applicability of the discovery rule is not evident on the face of the complaint but the plaintiff also does not plead facts that unequivocally show that the discovery rule does not apply.

Id. at 19 (emphasis supplied) (citations omitted). Likewise, there is nothing in the Complaint to indicate that Stephens discovered his injury and its cause outside the limitations period; to the contrary, the Complaint affirmatively alleges that Stephens did not know and could not have reasonably been expected to know that he had been injured and that Clash caused his injuries at the time of their sexual contact.[12] (A: 45) (Complaint ¶¶ 17-18). Accordingly, as here, "when 'the pleading does not reveal when the limitations period began to run . . . the statute of limitations cannot justify

---

[12] The district court relied on Matthews v. Kidder, Peabody & Co, 260 F.3d 239 (3d Cir. 2001), in holding that Stephens was on inquiry notice outside the limitations period as a matter of law. Matthews is inapposite for two reasons: (i) it was decided on summary judgment, and thus imposes a different, higher standard than that applicable to the dismissal of a complaint under Fed. R. Civ. P. 12(b)(6), see Schmidt at 19; and (ii) it applied the injury discovery rule specifically applicable to civil RICO securities claims, focusing on the existence of "storm warnings" as to when the plaintiff should have known of the possibility of fraud, an inquiry that fits poorly in the context of a victim of childhood sexual abuse recognizing his or her injuries and their cause. See 260 F.3d at 250-53.

20

Rule 12 dismissal.' " <u>Schmidt</u> at 19 (quoting <u>Barefoot Architect, Inc. v. Bunge</u>, 632

F.3d 822, 835 (3d Cir. 2011)).

     The Court in <u>Schmidt</u> further rejected imposing a requirement on the plaintiff

to demonstrate in pleading that he exercised "reasonable diligence" for purposes of

the discovery rule:

> [T]he District Court dismissed Schmidt's complaint for
> failing to affirmatively show that he exercised "reasonable
> diligence" with respect to discovering his injury.
> Requiring Schmidt to make a showing of reasonable
> diligence was premature. The District Court effectively
> required Schmidt to plead around an affirmative defense
> in his complaint, which is inconsistent with Rules 8 and
> 12(b)(6) and with the court's decision in <u>Barefoot</u>
> <u>Architect</u>.

<u>Id</u>. at 21. The district court in this case, likewise, impermissibly imposed a burden

on Stephens to plead around the affirmative defense of statute of limitations.[13] (See

---

[13]    Notably, in affirming dismissal of the Complaints against Clash in <u>Singleton</u>
<u>v. Clash</u>, 951 F.Supp. 2d 578 (S.D.N.Y. 2013), the Second Circuit in <u>S.M. v. Clash</u>,
588 Fed. Appx. 44 (2d Cir. 2014), diverges from the Third Circuit's decision in
<u>Schmidt</u>, running afoul of its pronouncement that it is not the plaintiff's burden to
establish "due diligence" in the complaint for purposes of the discovery rule:
"Because the plaintiffs failed to provide any basis for finding that they exercised
'due diligence' in uncovering their injuries, assuming *arguendo* that the
psychological harm constituted the plaintiffs' legal injury for purposes of §2255(a),
the discovery rule cannot apply." 558 Fed. Appx. at 45. The Second Circuit's
decision to affirm the dismissal of the complaints against Clash, therefore, cannot be
reconciled with this Court's ruling in <u>Schmidt</u>. In the Third Circuit, the pleading of
"due diligence" is not a requirement for claiming the benefit of the discovery rule,
and is not a basis for dismissal at the pleading stage. <u>Schmidt</u> at 19-21.

A: 30) (Memorandum, p. 14, asserting that "[i]n order to rebut inquiry notice, Stephens must demonstrate that he was unable to discover his injuries despite exercising reasonable diligence. . . [;] [p]lainly he does not satisfy this burden").

As in Schmidt, it was improper for the district court in this case to impose the burden on Stephens in pleading to establish delayed accrual under the discovery rule. Its dismissal of Stephens' federal claims under 18 U.S.C. §2255 pursuant to Fed. R. Civ. P. 12(b)(6) was therefore premature and in error.

### B. The Discovery Rule In a Case of Child Sexual Abuse Requires Inquiry Into the Diverse and Hidden Symptoms of Child Sexual Abuse

The objective reasonableness of a child sexual abuse victim's discovery of the critical facts of his or her injury and its cause should be considered in light of the scientific literature on the subject.  Hundreds of research studies have demonstrated that sexual abuse can alter a child's physical, emotional, cognitive and social development and impact his or her physical and mental health throughout his or her lifetime.  Damage of a sexual nature, when done to a child, forms an emotional scar on the psyche that does not typically reveal itself until later in life.  See generally David Viens, Countdown to Injustice:  The Irrational Application of Criminal Statutes of Limitations to Sexual Offenses Against Children, 38 Suffolk U.L. Rev. 169, 176 (2004) (describing effects of childhood sexual abuse).  See also Elliot Nelson et. al., Association Between Self-reported Childhood Sexual Abuse and

Adverse Psychosocial Outcomes: Results From a Twin Study, 59 Archives of General Psychiatry, 139, 139-45 (2002) (study finding that a person who suffered childhood sexual abuse had an increased risk for subsequently occurring adverse outcomes of major depression, suicide attempt, conduct disorder, alcohol and/or nicotine dependence, social anxiety, rape after the age of 18 years old, and divorce). In men who were sexually abused as children, one study revealed that sexual abuse can result in sexual problems, dysfunctions or compulsions, confusion and struggles over gender and sexual identity, homophobia and confusion about sexual orientation, problems with intimacy, shame, guilt and self-blame, low self-esteem and negative self images, and increased anger. David Lisak, The Psychological Impact of Sexual Abuse: Content Analysis of Interviews with Male Survivors, 7 J. of Traumatic Stress 525, 525-526, 544 (1994).

The diversity of these symptoms affect the ability of a victim of childhood sexual abuse to discover that the sexual acts were abuse and caused them harm. Many victims simply struggle to survive, for example, the onset of drug or alcohol abuse, depression, and suicide attempts. The notion that one's compliant sexual conduct at a young age with an adult may have caused a broad and multi-faceted downward life spiral is simply not within the reasonable perception of the victim, at least not at or near the time of the causal acts.

In Doe v. Paukstat, 863 F. Supp. 884 (E.D. Wis. 1994), the plaintiff brought a civil rights action pursuant to 42 U.S.C. §1983 when she was 26 years old, alleging sexual abuse by a teacher when she was 12 years old in the 6th grade. The Court denied summary judgment to the defendant on statute of limitations grounds based on the discovery rule, noting that the application of the statute of limitations in a case of child abuse, i.e., the determination of when the plaintiff knew or should have known that the childhood sexual activity caused her injuries for which a claim for damages could be made against the defendant, is "amorphous" as opposed to "cut and dried." Id. at 890-91. As a result, in this type of case, "the point under the discovery rule at which the running of the limitations period commences is a question for the trier of fact, unless the parties do not dispute the facts and only one conclusion may be drawn from them." Id. at 892.

Accordingly, proper application of the discovery rule should generally preclude dismissal at the pleadings stage in a case of childhood sexual abuse. The question of reasonable discovery should take into account the nature of child sexual abuse and the complex array of injuries it causes, which typically are not revealed as injuries and are not shown to be the result of sexual conduct until some point in time after they occur. This is particularly true where, as here, Stephens was compliant in the sexual acts and conduct of the perpetrator, and unaware of the harm that was being caused. It would be inequitable and contrary to the interests of justice

24

to hold, as did the district court, that discovery necessarily occurred as a matter of law at the time that Clash's criminal violations occurred.

### III. PENNSYLVANIA'S "BORROWING" STATUTE ALLOWS APPLICATION OF PENNSYLVANIA'S TOLLING STATUTE FOR VICTIMS OF CHILD SEXUAL ABUSE

Application of the statute of limitations to Stephens' claim for sexual battery hinges on construction of Pennsylvania's "borrowing" statute, 42 Pa. C.S. §5521(b), which requires in certain circumstances that a court in Pennsylvania apply the limitations period of another state. The Pennsylvania "borrowing" statute is controlling because a federal court exercising diversity jurisdiction, as here, applies "the forum's choice of law rules to determine the applicable statute of limitations." Ross v. Johns-Manville Corp., 766 F.2d 823, 826 (3d Cir. 1985); Sherfey v. Johnson & Johnson, 2014 U.S. Dist. LEXIS 79899 *17 (E.D. Pa. 2014). "Pennsylvania courts ordinarily apply the Pennsylvania statute of limitations. Thus, we conclude that a Pennsylvania court would apply its own limitations statute in determining the timeliness of plaintiff's claims." Ross, 766 F.2d at 826. Applicable Pennsylvania law on the statute of limitations includes the "borrowing" statute, 42 Pa. C.S. §5521(b), which states as follows:

> (b) General rule. – The ***period of limitation*** applicable to a claim accruing outside this Commonwealth shall be either that provided by the law of the place where the claim

25

> accrued or by the law of this Commonwealth, whichever
> first bars the claim.

(Emphasis supplied). By its plain language, the "borrowing" statute applies to the "period of limitation", which is the time period assigned by state statute to the particular claim at issue, typically measured in number of years.

The district court dismissed Stephen's sexual battery claim because it held that the "borrowing" statute, 42 Pa. C.S. §5521(b), required application of New York's period of limitations ***and*** its tolling rules, to the exclusion of an otherwise applicable Pennsylvania tolling statute, 42 Pa. C.S. §5533(b)(2). Section 5533(b) is Pennsylvania's "infancy" tolling statute, which was amended in 2002 to include tolling for victims of child sexual abuse:

> b. **Infancy** –
>
> . . .
>
> (2)(i) If an individual entitled to bring a civil action arising from childhood sexual abuse is under 18 years of age at the time the cause of action accrues, the individual shall have a period of 12 years after attaining 18 years of age in which to commence an action for damages regardless of whether the individual files a criminal complaint regarding the child sexual abuse.

Stephens' claim is timely if this tolling provision is applicable.[14] In holding that Pennsylvania's "borrowing" statute precluded application of Pennsylvania's child

---

[14]    Absent this tolling for a claim of childhood sexual abuse under Pennsylvania law, Stephens claim would be untimely under the period of limitations for the tort alleged in either New York law (one year) or Pennsylvania law (two years). (See A: 10-12) (Memorandum pp. 7-9).

sexual abuse tolling statute, the district court focused on what it deemed the purpose

of Pennsylvania's "borrowing" statute, instead of the language of the statute:

> The purpose of Pennsylvania's borrowing statute is "to prevent a plaintiff who sues in Pennsylvania from obtaining greater rights than those available in the state where the cause of action arose." <u>Gwaltney v. Stone</u>, 387 Pa. Super 492, 564 A.2d 498, 503 (1989); <u>see also Ross</u>, 766 F.2d at 827-28 ("[The borrowing statute] was intended to guard against forum shopping by provided that a foreign claim cannot be maintained if it is barred by the statute of limitations of the foreign state."). In accordance with this purpose, the court will apply the tolling provision of the state whose laws apply under the borrowing statute.

(A: 12-13) (Memorandum, pp. 9-10). According to the district court, therefore,

because New York law applied under the "borrowing" statute, Pennsylvania's

tolling statute for the claims of victims of child sexual abuse was inapplicable.

Applying New York law, Stephens' common law claim for battery expired, as New

York has no comparable child sexual abuse tolling statute. This was error, however,

as the district court failed to examine the language of the "borrowing" statute.

### A. Applying Principles of Statutory Construction, Pennsylvania's "Borrowing" Statute Does Not Encompass Tolling Provisions

In the exercise of statutory construction, it is imperative that the Court first

examine the plain meaning of the statute. In Pennsylvania, the Statutory

Construction Act is applied to issues involving statutory interpretation.[15]

Commonwealth v. McCoy, 599 Pa. 599, 962 A.2d 1160, 1165 (2009). The Act

declares that "[w]hen words of a statute are clear and free from all ambiguity, the

letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S.

§1921 (b). The object of interpretation is to ascertain legislative intent, and "[a]

statute's plain language generally provides the best indication of legislative intent."

McCoy, 962 A.2d at 1165. "Only where the words of a statute are not explicit will

[the court] resort to other considerations to discern legislative intent." Id. This Court

had made clear that a statute's plain language is not to be lightly disregarded:

> When the statute's language is plain, the sole function of
> the courts – at least where the disposition required by the
> text is not absurd – is to enforce it according to its terms.
> The exception to this rule is narrowly cast. Generally,
> where the text of a statute is unambiguous, the statute
> should be enforced as written and only the most
> extraordinary showing of contrary intentions in the
> legislative history will justify a departure from that
> language.

Murphy v. Millennium Radio Group LLC, 650 F.3d 295, 301 (3rd Cir. 2011).

By its plain language, the "borrowing" statute, 42 Pa. C.S. §5521(b), applies

to the "***period of limitation*** applicable to a claim. . . ." (Emphasis supplied). The

district court, in error, failed to address this plain language. Instead, it assumed that

---

[15] A federal court sitting in diversity applies the Pennsylvania Statutory Construction
Act to interpret a Pennsylvania statute. See Principal Life Ins. Co. v. DeRose, 2011
U.S. Dist LEXIS 114847 *16 (M.D. Pa. 2011).

the statute's "purpose" was to borrow tolling as well, even though the "borrowing"

statute makes no mention of tolling.  (See A: 12-13) (Memorandum, pp. 9-10).  In

William A. Graham Co. v. Haughty, 646 F.3d 138 (3d Cir. 2011), this Court

discussed the plain distinction between the terms "accrual", "tolling", and "period

of limitation" for purposes of statutes of limitation:

> Accrual, as we have said, occurs once events satisfying all
> the elements of a cause of action have taken place.  At that
> point, the period prescribed by the applicable statute of
> limitations ordinarily begins to run – time begins to count
> against the plaintiff, such that if enough of it goes past he
> can no longer obtain relief.  There exist, however, various
> statutory and judge-made rules that operate to toll the
> running of the limitations period – that is, "to stop [its]
> running"; "to abate" it, Blacks Law Dictionary (9th ed.),
> *supra*, or "[t]o suspend or interrupt it, Ballentine's Law
> Dictionary, *supra*.  These tolling doctrines include those
> for infancy, the pendency of a class action which includes
> absent class members' claims, and the dictates of equity.

Id. at 147.  By referring in Section 5521(b) to only the "period of limitation", it must

be presumed that the legislature intended to exclude the separate concepts of tolling

and accrual from the "borrowing" statute.   Any other reading of the statutory

language would be in derogation of its plain meaning.  It is a well established maxim

of statutory construction, "under the doctrine of *expressio unius est exclusio alterius*,

[that] the inclusion of a specific matter in a statute implies the exclusion of other

matters."  Atcovitz v. Gulph Mills Tennis Club, 571 Pa 580, 589, 812 A.2d 1218

(2002) (holding that "[w]e must infer that" this doctrine applies to a statute's failure to "specifically refer" to a matter that could be made within its scope).

Moreover, the current version of Section 5521(b) was enacted in 1976. Act of July 9, 1976, P.L. 586, No. 142, §25(b). The version of the borrowing statute in place prior to its enactment used broad language which makes clear that the "borrowing" included tolling and accrual along with the period of limitation:

> When a cause of action has been fully barred by the state in which it arose, such bar shall be a complete defense to an action thereon in any of the courts of this Commonwealth.

McKenna v. Ortho Pharmaceutical Corp., 622 F.2d 657, 659 (3d Cir. 1980) (quoting prior version of statute). Accordingly, the "borrowing" statute was amended to change the reference, "[w]hen a cause of action has been ***fully barred*** . . .", to "[t]he period of limitation. . ." in the current version. The only fair inference is that it was the legislature's intent to remove tolling and accrual from the scope of the "borrowing" of a foreign state's law under the statute.

### B. Other States Adopting the Same Language in their "Borrowing" Statutes Construe That Language to Exclude Tolling

There does not appear to be a decision in Pennsylvania addressing the language of the "borrowing" statute for the purpose of determining whether it encompasses tolling, although other states have addressed this question. In West

Virginia, the Supreme Court of Appeals analyzed the identical "borrowing" statute

and the language, "period of limitation", finding that it does not encompass tolling:

> According to Webster's "period" is singular and its
> meanings include "a series of events, or a single action."
> If "period" means a series, then all of the other stat's
> limitations are borrowed, but if "period" means a single
> action, then only the appropriate statute of limitation is
> borrowed. ***The statute's use of the singular of***
> ***"limitation," along with the use of the singular verb***
> ***"bars," indicates that only the appropriate statute of***
> ***limitation is borrowed and not its accouterments.***

McKinney v. Fairchild Int'l, Inc., 199 W.Va. 718, 487 S.E. 2d. 913, 920 (1997)

(emphasis supplied).[16]   The same operative words referenced in McKinney are used

in 42 Pa. C.S. §5521(b).   The West Virginia Court in McKinney rejected the

defendant's argument that the language in the statute, "whichever bars the claim",

militates in the opposite direction to include tolling provisions.   Consistent with the

doctrine of *expressio unius est exclusio alterius*, the Court expressly held, given that

the statute "does not specifically provide for the borrowing of another state's tolling

provisions[,] [t]his omission indicates that [West Virginia's] borrowing statute

---

[16]    The Supreme Court of Oklahoma likewise analyzed the words "period of limitation" in the identical "borrowing" statute,  and gave it a limiting construction consistent with McKinney.   Consolidated Grain & Barge Co., v. Structural Systems, Inc. 212 P.3d 1168, 1175 (Okl. 2009).   There, the Court held that the language of the "borrowing" statute did not encompass a statute of repose.   Id.

borrows only the period of limitation necessary to determine the timeliness of a claim when it is originally filed."[17] Id. at 920.

_____

[17]     In McKinney, the Court reversed the lower court's dismissal of the plaintiff's claim, holding that it should not have borrowed Kentucky's tolling provisions, but should have applied the tolling provisions of West Virginia law. 487 S.E. 2d at 925. After analyzing the language of the borrowing statute, the court applied a conflicts of law approach particular to West Virginia, holding that there was a presumption in favor of the forum state's tolling provisions, which could be overcome by a showing that another state has a more significant relationship to the transaction and the parties:

> We find that the traditional approach to conflict of laws creates a presumption that the forum state's tolling provisions, as a matter of procedure, apply; however, if another state has a more significant relationship to the transaction and the parties, the modern approach indicates that the tolling provisions of the state with the significant relationship should apply. Based on both our traditional and modern approaches to conflict of laws questions, we hold that where a choice of law question arises about whether the tolling provisions of West Virginia, W.Va. Code, 55-2-18 [1985] or of the place where the claim accrued should be applied, the circuit court should ordinarily apply West Virginia law, unless the place where the claim accrued has a more significant relationship to the transaction and the parties.

Id. at 923. Pennsylvania law, in contrast requires application of Pennsylvania's statute of limitations, and since Pennsylvania's "borrowing" statute does not encompass tolling, Pennsylvania tolling rules must apply. See Ross, 766 F.3d at 826. Nonetheless, if the West Virginia approach were to be used in the instant case, Pennsylvania's infancy tolling provision for victims of childhood sexual abuse should still apply. Stephens was at all relevant times a Pennsylvania resident, lured as a minor from Pennsylvania by Clash for purposes of engaging him in sexual activities. As a resident of Pennsylvania, Stephens is entitled to the protection of the infancy tolling statute, 42 Pa. C.S.§5533(b)(2).

The West Virginia Court further addressed the argument that the "borrowing" statutes in most states borrow both the applicable statute of limitations from the foreign state and its tolling provisions. Id. at 920. The district court in the instant case essentially relied on this same argument, quoting the RESTATEMENT (SECOND) OF CONFLICT OF LAWS §142 cmt. f (1971), for the proposition that "[t]he majority rule is that the forum will apply the tolling provisions of the state referred to by its borrowing statute." (A: 13) (Memorandum, p. 10). The West Virginia Court, however, rejected this argument, noting that "none of these jurisdictions [where the borrowing statute encompassed tolling rules] has the same statutory language as West Virginia."[18] McKinney, 487 S.E. 2d at 920.

Pennsylvania, in contrast, has the ***identical*** language for its borrowing statute as the West Virginia borrowing statute interpreted by the Court in McKinney. As

---

[18] The RESTATEMENT (SECOND) OF CONFLICT OF LAWS §142 also states in comment (a), "scope of section", that "if by the forum statute the running of the statute of limitations is tolled during the minority of the plaintiff, **the local law of the forum will be applied to determine for purposes of the statute the age when minority ends.**" (Emphasis supplied). As noted above, the tolling provision at issue, 42 Pa. C.S. §5533(b), is encompassed within Pennsylvania's infancy tolling law. Under this principle set forth in the RESTATEMENT, therefore, the Pennsylvania infancy tolling rule applies, and Stephens' claim is therefore timely. The district court also quotes this portion of the RESTATEMENT stating that "[i]n applying the statutes of limitation of the state referred to in its borrowing statute, the forum will apply such local law rules of the foreign state, **as those relating to laches and sealed instruments,** which bear upon the question of whether the foreign statutory period has ran." RESTATEMENT (SECOND) OF CONFLICT OF LAWS §142 cmt f (1971). Notably, this discussion does not reference tolling provisions.

33

the Court held in <u>McKinney</u>, the plain meaning of this statutory language is that

tolling provisions are not borrowed from the law of the state where the action

accrued.

### C. Other Tenets of Statutory Construction Further Support a Construction of the "Borrowing" Statute that Excludes Tolling

Because, as discussed above, the plain meaning of Section 5521(b) is clear

and unambiguous, it would be inappropriate to reach beyond that language to discern

legislative intent.  <u>McCoy</u>, 962 A.2d at 1166.  Nonetheless, an analysis of the history

of the statute supports the same result obtained in analyzing its plain meaning.

Section 5521 is entitled the "Uniform Statute of Limitations on Foreign Claims Act."

42 Pa. C.S. §5521(a).  This statute was approved by the uniform law committee in

1957 for the purpose of making state "borrowing" statutes uniform.  <u>McKinney</u>, 487

S.E. 2d at 920; <u>see also</u> Vernon, <u>The Uniform Statute of Limitations on Foreign

Claims Act: Tolling Problems</u>, 12 Vanderbilt L. Rev. 971 (1959)  (noting that the

uniform law promulgated was a "limited" borrowing statute, and advocating that it

be amended to incorporate tolling).  This uniform law, however, was not a success:

Other than Pennsylvania, which did not enact the law until 1976, only Oklahoma

and West Virginia enacted the law.  <u>See</u> <u>Consolidated Grain</u>, 212 P.2d at 1168 n.10.

"In 1978, the National Conference of Commissioners on Uniform State Laws

withdrew the Uniform Statute of Limitations on Foreign Claims Act of 1957 from

recommendation for enactment because it was obsolete." Id.  (citing to prefatory note to the Uniform Conflict of Laws – Limitations Act of 1982, 12 U.L.A. 156 (2008)); see also McKinney, 487 S.E. 2d at 919-920 (noting that "[i]n 1982, the National Conference of Commissioners on Uniform State Laws approved the *Uniform Conflict of Laws – Limitation Act*, which attempted to address some of the problems arising from the previous uniform borrowing act").

The Pennsylvania Statutory Construction Act, Section 1927, entitled "Construction of Uniform Laws", provides that "[s]tatutes uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them."  1 Pa. C.S. §1927.  Given the circumstances discussed above, Pennsylvania joined only West Virginia and Oklahoma in enacting the identical language of the Uniform Statute of Limitations on Foreign Claims Act.  For purposes of §1927, therefore, the Pennsylvania "borrowing" statute should be interpreted and construed consistently with the same statutes in West Virginia and Oklahoma.  As discussed above, the highest courts in West Virginia and Oklahoma interpret the language "period of limitation" in the borrowing statute to exclude the tolling provisions from its scope.[19]

---

[19]    See note 16 supra and surrounding text.

Based on the foregoing, the district court was misguided in finding that the "purpose" of the Pennsylvania borrowing statute was to incorporate foreign state tolling provisions in addition to the period of limitation.[20]    (A: 12-13) (Memorandum, pp. 9-10). The district court relied upon <u>Gwaltney v. Stone</u>, 387 Pa. Super. 492, 564 A. 2d 498 (1989), which makes the overly broad and sweeping statement that "[t]he primary effect of borrowing statutes is to prevent a plaintiff from gaining more time to bring an action merely by suing in a forum other than the forum where the cause of action accrued." <u>Id</u>., 564 A.2d at 503. The Court in <u>Gwaltney</u> cites in support of its broad pronouncement of legislative intent the case of <u>Wilt v. Snack</u>, 147 F.Supp. 700, 704 (E.D. Pa. 1957), which was based on the language of the prior, broader "borrowing" statute. <u>See</u> <u>McKenna</u>, 622 F.2d at 659, discussed <u>supra</u>, pp. 28-29. At the same time, the Court in <u>Gwaltney</u> discussed the general purposes of a borrowing statute:[21]

---

[20]    Given the lack of uniformity in borrowing statutes generally, it was particularly misplaced for the district court to rely upon RESTATEMENT (SECOND) OF CONFLICT OF LAWS §142, since it must conflate borrowing statutes to formulate a "majority" rule among state statutes, disregarding differences in the language of those statutes. Rather, an appropriate statutory construction in this context, as discussed above, requires a focus on each state's statutory language.

[21]    The district court also discussed <u>Ross v. Johns-Manville Corp.</u>, 766 F.2d 823 (3d Cir. 1985), where the Court held that it would apply the shorter Pennsylvania statute of limitations in that case in affirming dismissal of the action. <u>Ross</u> did not concern a tolling statute, and is therefore factually inapposite. Nonetheless, the court in <u>Ross</u>, consistent with comment (a) to the RESTATEMENT (SECOND) CONFLICT OF LAWS §142 (1971), discussed <u>supra</u>, noted that "the law of the forum determines

36

> Borrowing statutes similar to the one adopted in Pennsylvania have been enacted for the following general reasons:  (1) to create a uniform system of conflict of laws dealing with statutes of limitations; (2) to prevent forum shopping; (3) to remove the possibility of perpetual liability; and (4) to benefit residents of the enacting state.

Id.  Applying these purposes to the instant facts and circumstances, the claim in this case is brought by a Pennsylvania resident who wishes to claim the benefit of a tolling statute intended for the benefit of Pennsylvania victims of childhood sexual abuse, like himself.  In doing so, Stephens is not engaging in forum shopping in a foreign state.  Further, to the extent that the legislature's enactment of Section 5521(b) seeks to create a uniform system for borrowing statutes of limitation, it should be construed similarly to its identical counterparts in the other states in which it was enacted, West Virginia and Oklahoma.  As discussed above, this requires that the statute be construed to exclude the borrowing of tolling provisions.

As a matter of policy, in this case Stephens is entitled to the benefit of tolling for claims of childhood sexual abuse under 42 Pa. C.S. §5533(b)(2).  This statute enacted on June 28, 2002, reflects an expansion of infancy tolling for victims of child sexual abuse to address the unfairness of existing law, which provided child sexual abuse victims with only two years to bring tort claims after reaching the age of majority, the same as for other civil tort claimants.  See 2002 Legislative Journal –

---

whether and under what circumstances a statute of limitations can be tolled".  Id. at 828.

House 1261 (June 11, 2002) (remarks of Mr. Gannon) (noting that "[t]his amendment also has been agreed to by the sponsor and is needed to prevent courts from undercutting the General Assembly concerning victims of childhood sexual abuse that they are entitled to a greater amount of time to bring a civil suit"). Under this legislation, the statute of limitations is tolled for victims of childhood sexual abuse to bring a claim for damages arising from such abuse for a period of 12 years after attaining 18 years of age (i.e., until the 30 years of age). 42 Pa. C.S. §5533(b)(2). One of the legislation's sponsors, Senator Greenleaf stated to the senate: This legislation I think is important. **It will go a long way to help victimized children in our Commonwealth**, and I ask for an affirmative vote." 2002 Legislative Journal – Senate 1993 (remarks of June 25, 2002) (emphasis supplied). Stephens is a victimized child in the Commonwealth. When he was a minor he was lured and enticed by Clash to travel from Pennsylvania to New York for the purpose of engaging in depraved and heinous sexual acts. The tolling provision of §5533(b)(2) was intended to apply to victims such as Stephens.

### D. Stephens States a Claim for Sexual Battery

Applying the Pennsylvania childhood sexual abuse tolling statute, 42 Pa. C.S. §5533(b)(2), Stephens alleges a timely state law claim. In this regard, there is an issue of fact as to whether Clash's acts constitute "child sexual abuse" within the statute, which refers to activities engaged in "as a result of forcible compulsion or

38

by thread of forcible compulsion which would prevent resistance by a person of reasonable resolution". Id., 42 Pa. C. S. §5533(b)(2)(ii); see Chancellor v. Pottsgrove School District, 501 F.Supp 2d 698 (E.D. Pa. 2007) (denying summary judgment to the defendant on the issue of "forcible compulsion" in a case involving a ten-month sexual relationship between the plaintiff, a senior in high school and her band leader"). Stephens otherwise properly alleges the elements of a claim of sexual battery. See Cooper v. Lakeneu Hosp., 616 Pa. 550, 51 A.3d 183 (2012) ("[t]he tort of battery has been described as nonconsensual fondling that is either harmful or offensive"); Rivea v. Puerto Rican Home Attendant Services, Inc., 930 F.Supp 124, 132-33 (S.D.N.Y. 1996) (describing New York law of assault and battery).

## CONCLUSION

The district court erred as a matter of law in dismissing pursuant to Fed. R. Civ. P. 12(b)(6), Stephens' claims in this case. First, as to Stephens' claims under the Child Abuse Victims' Rights Act of 1986, 18 U.S.C. §2255, the discovery rule applicable to accrual of the statute of limitations presents a question of fact not susceptible to determination on a motion to dismiss. Second, as to Stephens' common law claim for sexual battery, principles of statutory construction applied to Pennsylvania's "borrowing" statute, 42 Pa. C.S. §5521(b), allows for application of Pennsylvania's tolling statute for victims of childhood sexual abuse, 42 Pa. C.S. §5533(b)(2), making this action timely. Stephens therefore respectfully requests that

39

the district court's dismissal of Stephens' claims for violation of federal criminal statutes (Counts II and III of the Complaint) and for sexual battery (Count I) be reversed, and this case remanded for further proceedings.

Dated November 5, 2014.           Respectfully submitted,

  s/ Stuart S. Mermelstein
        HERMAN LAW
        Jeff Herman, Esq.
        Stuart S. Mermelstein, Esq.
        3351 N.W. Boca Raton Boulevard
        Boca Raton, Florida 33431
        Tel:   305-931-2200
        Fax:   305-931-0877
        *Attorneys for Appellant Stephens*

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2014, the foregoing document is being served on all counsel of record on the Service List in the manner specified, either via the CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        s/ Stuart S. Mermelstein

Michael G. Berger, Esq.
Attorney ID No.: NY1418003
Law Offices of Michael G. Berger
250 Park Avenue, 20th Floor
New York, NY  10177
*Attorneys for Defendant*
Email: mgberger@mgberger.com

# <u>CERTIFICATION</u>

The undersigned hereby certifies that (a) at least one attorney whose name appears on the brief is a member of the Third Circuit's bar; (b) the brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) and contains 9,946 words, as determined by the computer program Microsoft Word; and (c) the text of the electronic document is identical to the paper copies, and the virus detection program, Microsoft Security Essentials, was run against the final PDF version of the brief prior to filing, and no virus was detected.

/s/ Stuart S. Mermelstein
Stuart S. Mermelstein
