# United States Court of Appeals

*for the*

# Third Circuit

Case No. 14-3337

SHELDON STEPHENS,

*Plaintiff-Appellant,*

– v. –

KEVIN CLASH,

*Defendant-Appellee.*

APPEAL FROM TWO ORDERS ENTERED IN THE UNITED STATES DISTRICT
COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA,
CASE NO. 1-13-CV-00712, U.S. DISTRICT JUDGE CHRISTOPHER C. CONNER

## BRIEF FOR DEFENDANT-APPELLEE

LAW OFFICES OF MICHAEL G. BERGER
250 Park Avenue, 20th Floor
New York, New York 10177
(212) 983-6000

– and –

LAW OFFICES OF CHRISTOPHER S. LUCAS LLC
2917 Glenwood Road
Camp Hill, Pennsylvania 17011
(717) 737-4155

*Attorneys for Defendant-Appellee*

# TABLE OF CONTENTS

PAGE

STATEMENT OF ISSUES……………………………………………….1

STATEMENT OF RELATED CASES AND PROCEEDINGS…………....2

STATEMENT OF THE CASE…………………………………………....2

STATEMENT OF FACTS……………………………………………..5

SUMMARY OF THE ARGUMENT………………………………………..7

ARGUMENT………………………………………………………..…8

I.    STEPHENS'S FEDERAL CLAIMS ARE TIME-BARRED
       BY THE VERY STATUTE UNDER WHICH HE SUES…………….…………8

       A.    Stephens's Federal Claims Are Untimely
              Under the Plain Text of 18 U.S.C. § 2255(b)………………….8

       B.    No Delayed Accrual or Discovery Rule Applies
              To Sexual Abuse Claims Brought Under 18 U.S.C. § 2255....10

              1.    Congress Did Not Include a Discovery Rule
                     in 18 U.S.C. § 2255………………...………………10

              2.    Congress Intended for 18 U.S.C. § 2255
                     to Not Have a Discovery Rule…………………………12

                     a.    Absence of an Express Prohibition
                            of a Discovery Rule Does Not Imply
                            Endorsement of a Discovery Rule………..……..12

                     b.    Congress Intended for § 2255(b)
                            to *Not* Have a Discovery Rule…………..……13

              3.    Stephens's Arguments for Implying
                     a Discovery Rule Are Unavailing………………..……15

a.    Stephens's Federal Claims Accrued
at the Time of the
Alleged Statutory Violations………………….....15

b.    Strong Policy Considerations Militate
Against Recognition of a Discovery Rule………17

C.    The 2013 Amendment to § 2255
Did Not Resuscitate Stephens's Stale Claims…………..……19

II.    EVEN UNDER A DISCOVERY RULE,
STEPHENS'S FEDERAL CLAIMS WOULD BE TIME-BARRED…….…….20

A.    Discovery Occurred at the Time
of the Alleged Violations………………………………………..20

1.    Stephens Discovered His Alleged Injuries
and Their Cause Immediately………………..………..21

2.    Stephens Was on Inquiry Notice of
His Alleged Injuries and Their Cause Immediately…...23

B.    Stephens Offers No Reason to Reverse
the Lower Court's Holding That His Federal Claims
Would Be Untimely Under a Discovery Rule…….………….25

III.    STEPHENS'S STATE LAW CLAIM
IS GOVERNED AND BARRED
BY NEW YORK'S STATUTE OF LIMITATIONS………………….…..32

A.    Pennsylvania Has a "Borrowing Statute" That Determines
Which State's Statute of Limitations Governs………….…32

B.    Pennsylvania's Borrowing Statute Requires
Application of New York's Statute of Limitations…..……34

1.    The Claim Accrued in New York……………....……34

2.      New York's Statute of Limitations
        Barred the Claim First…………………………...…….35

        a.      New York's Statute of Limitations
                for Battery Claims Barred the Claim First……....35

        b.      Even If There Had Been Forcible Compulsion,
                New York's Statute of Limitations
                for Forcible Compulsion Battery Claims
                Would Have Barred the Claim First…………….38

C.      Stephens's Arguments in Favor of Applying the
        Pennsylvania Tolling Statute Should Be Rejected…………..40

        1.      The Plain Language of the Borrowing Statute
                Provides for Borrowing of Tolling Rules……………...40

        2.      Stephens's Reliance on Other States' Interpretations
                of Supposedly Similar Statutes Is Misplaced………….43

                a.      The Oklahoma Case Stephens Cites
                        Involved a Very Different Borrowing Statute
                        and Did Not Involve Tolling……………...…..46

D.      Stephens Mistakenly Relies on Ross, the Restatement,
        the Pennsylvania Statutory Construction Act,
        and Various Policy Arguments………………………..……..47

E.      Stephens Pleaded That He Was a "Compliant" Victim,
        Not That He Was the Subject of Forcible Compulsion………49

        1.      Even If Pennsylvania's Tolling Rules Applied,
                Under New York Substantive Law,
                There Was No "Forcible Compulsion"………………..50

                a.      Pennsylvania Choice of Law Rules Require
                        Application of New York Substantive Law…….50

                b.      The Facts Pleaded Do Not Show
                        Forcible Compulsion Under New York Law…...51

2.    Even If Pennsylvania Substantive Law
       Were to Apply, Which It Does Not,
       the Claim Would Still Be Time-Barred…………..……53

CONCLUSION………………………………………………………………..59

# TABLE OF AUTHORITIES

CASES                                                              PAGES

*Barefoot Architect, Inc. v. Bunge*,
    632 F.3d 822 (3d Cir. 2011)……………………………………………31

*Baselice v. Franciscan Friars Assumption BVM Province, Inc.*,
    2005 PA Super 246, 879 A.2d 270 (2005)………………………..……36

*Bay Area Laundry & Dry Cleaning Pension Trust Fund
v. Ferbar Corp. of California*,
    522 U.S. 192, 118 S. Ct. 542, 139 L. Ed. 2d 553 (1997)………....9, 12

*Bohus v. Beloff*,
    950 F.2d 919 (3d Cir. 1991)………………………………………....26

*Chancellor v. Pottsgrove School District*,
    501 F. Supp. 2d 695 (E.D. Pa. 2007)…………………………..…..52, 58

*City of Edinburgh Council v. Pfizer, Inc.*,
    754 F.3d 159 (3d Cir. 2014)……………………………….………….8

*Commonwealth v. Berkowitz*,
    537 Pa. 143, 641 A.2d 1161 (1994)…………………………………57

*Consolidated Grain & Barge Co. v. Structural Systems, Inc.*,
    2009 OK 14, 212 P.3d 1168 (2009)…………………………..…46-48

*Cooper v. Lankenau Hospital*,
    616 Pa. 550, 51 A.3d 183 (2012)……………………………..………..58

*Crouse v. Cyclops Industries*,
    560 Pa. 394, 745 A.2d 606 (2000)…………………………………29

*Curran v. Archdiocese of Philadelphia*,
    77 Pa. D. & C.4th 225 (Phila. Ct. Com. Pl. 2005)………………..…37

*Dalrymple v. Brown*,
    549 Pa. 217, 701 A.2d 164 (1997)…………………………......…37

*Davis v. Grusemeyer*,
        996 F.2d 617 (3d Cir. 1993)……………………………………………30

*Disabled in Action of Pennsylvania*
*v. Southeastern Pennsylvania Transportation Authority*,
        539 F.3d 199 (3d Cir. 2008)………………………….…………20-21

*Doe v. Boland*,
        698 F.3d 877 (6th Cir. 2012)……………………………………22, 26

*Doe v. Paukstat*,
        863 F. Supp. 884 (E.D. Wis. 1994)………………………………….32

*E.J.M. v. Archdiocese of Philadelphia*,
        424 Pa. Super. 449, 622 A.2d 1388 (1993)……………..……….36-37

*Frankentek Residential Systems, LLC v. Buerger*,
        No. 2:12-CV-00767, 2014 U.S. Dist. LEXIS 57046
        (E.D. Pa. Apr. 24, 2014)……………………………….……………43

*Gabelli v. SEC*,
        133 S. Ct. 1216, 185 L. Ed. 2d 297 (2013)……………..……..9, 12, 27

*Gleason v. Borough of Moosic*,
        609 Pa. 353, 15 A.3d 479 (2011)……………………………………37

*Graham v. Ferguson*,
        593 F.2d 764 (6th Cir. 1979)………………………………....….44

*Gwaltney v. Stone*,
        387 Pa. Super. 492, 564 A.2d 498 (1989)…………...33-34, 43, 45, 49

*Hammersmith v. TIG Insurance Co.*,
        480 F.3d 220 (3d Cir. 2007)……………………………..………..45

*Hollander v. Brown*,
        457 F.3d 688 (7th Cir. 2006)……………………….………28-29

*Johnson v. Smithkline Beecham Corp.*,
    Civ. No. 11-5782, 2014 U.S. Dist. LEXIS 147543
    (E.D. Pa. Oct. 16, 2014)……………………………………..……43

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*,
    Case No. 10-CV-4124, 2013 U.S. Dist. LEXIS 180463
    (W.D. Ark. Dec. 24, 2013)………………………………………10-11

*Krafft v. Downey*,
    68 A.3d 329 (Pa. Super. Ct. 2013)…………………………..…………49

*Kronisch v. United States*,
    150 F.3d 112 (2d Cir. 1998)……………………………………...…….25

*Mack Trucks, Inc. v. Bendix-Westinghouse Automotive Air Brake Co.*,
    372 F.2d 18 (3d Cir. 1966)………………………………………..…....34

*Mathews v. Kidder Peabody & Co.*,
    260 F.3d 239 (3d Cir. 2001)…………………...……………..21, 23-24

*McD. v. Rosen*,
    423 Pa. Super. 304, 621 A.2d 128 (1993)……………………….…..37

*McGinley v. McGinley*,
    Civil Action No. 04-CV-3500,
    2005 U.S. Dist. LEXIS 31739 (E.D. Pa. Dec. 2, 2005)……………..34

*McKenna v. Ortho Pharmaceutical Corp.*,
    622 F.2d 657 (3d Cir. 1980)…………………………………………42

*McKinney v. Fairchild International, Inc.*,
    199 W. Va. 718, 487 S.E.2d 913 (1997)……………….....44-45, 48-50

*People v. Evans*,
    85 Misc. 2d 1088, 379 N.Y.S.2d 912
    (Sup. Ct. N.Y. County 1975)………………………...………..52-53

*Rivera v. Puerto Rican Home Attendants Services, Inc.*,
    930 F. Supp. 124 (S.D.N.Y. 1996)…………………………...…58

*Ross v. Johns-Manville Corp.*,
    766 F.2d 823 (3d Cir. 1985)…………………….....32, 39-40, 47-48

*Schmidt v. Bishop*,
    779 F. Supp. 321 (S.D.N.Y. 1991)…………………………………..35

*Schmidt v. Skolas*,
    No. 13-3750, 2014 U.S. App. LEXIS 19889
    (3d Cir. Oct. 17, 2014)…………………………………...……27-29

*Sherfey v. Johnson & Johnson*,
    Civil Action No. 12-4162,
    2014 U.S. Dist. LEXIS 79899 (E.D. Pa. June 12, 2014)……………43

*Shields v. Consolidated Rail Corp.*,
    810 F.2d 397 (3d Cir. 1987)……………………...………………45

*Shovah v. Mercure*,
    Case No. 2:11-cv-201,
    2014 U.S. Dist. LEXIS 119290
    (D. Vt. Aug. 27, 2014)……………………………….10, 18-19, 22, 26

*Singleton v. Clash*,
    Nos. 12 Civ 8465 (JGK), 12 Civ 8948 (JGK),
    13 Civ. 2172 (JGK), 2013 U.S. Dist. LEXIS 92088
    (S.D.N.Y. July 1, 2013)…………………………………..………*passim*

*S.M. v. Clash*,
    558 Fed. Appx. 44 (2d Cir. 2014)………………………………...2, 10

*Stephens v. Clash*,
    Civil Action No. 1:13-CV-712,
    2014 U.S. Dist. LEXIS 83550 (M.D. Pa. June 19, 2014)…….....*passim*

*Stephens v. Clash*,
    Civil Action No. 1:13-CV-712,
    2013 U.S. Dist. LEXIS 163861 (M.D. Pa. Nov. 18, 2013)…......*passim*

*United States v. Kubrick*,
    444 U.S. 111, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979)...……15-16, 24

*Urie v. Thompson*,
     337 U.S. 163, 69 S. Ct. 1018, 93 L. Ed. 1282 (1949)……………15-16

*Van Buskirk v. Carey Canadian Mines, Ltd.*,
     760 F.2d 481 (3d Cir. 1985)……………………………………………30

*Waldron v. Armstrong Rubber Co.*,
     64 Mich. App. 626, 236 N.W.2d 722 (1975)…………..……………44

*Wallace v. Kato*,
     549 U.S. 384, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007)..…..9, 29, 32

*White v. Mercury Marine, Division of Brunswick, Inc.*,
     129 F.3d 1428 (11th Cir. 1997)…………………………….....……15

*William A. Graham Co. v. Haughey*,
     568 F.3d 425 (3d Cir. 2009)……………………………..……20, 41

*Wilt v. Smack*,
     147 F. Supp. 700 (E.D. Pa. 1957)……………………....…………33


STATUTES

1 Pa. Cons. Stat. § 1927……………………………………...……….48

12 Okla. Stat. Supp. 1970, § 105……………………………....………47

18 Pa. Cons. Stat. § 3123…………………………………….…………..57

18 U.S.C. § 2255……………………………………………....*passim*

18 U.S.C. § 2422………………………………………...……1-2, 8, 16, 21, 28

18 U.S.C. § 2423………………………………………………1-2, 8, 16, 22, 28

18 U.S.C. § 2520(e)……………………………………….……………11

28 U.S.C. § 1658(b)…………………………………………………..11

28 U.S.C. § 2409a…………………………………………………...……..11

42 Pa. Cons. Stat. § 5521…………………….……1, 4, 8, 33, 40-41, 44, 47

42 Pa. Cons. Stat. § 5524………………………………….…..…..……..36

42 Pa. Cons. Stat. § 5533……………………….………….......38, 49, 53-54

N.Y. C.P.L.R. 208……………………………………………...8, 35, 39

N.Y. C.P.L.R. 213-c……………………………………………...…39

N.Y. C.P.L.R. 215…………………………….………………..2, 4-5, 8, 35

N.Y. Penal Law § 130.00…………………………………….……51-52

N.Y. Penal Law § 130.05……………………………………………..52

Violence Against Women Reauthorization Act of 2013,
Pub. L. No. 113-4, 127 Stat. 54………………………………….…………19

FEDERAL RULES

Fed. R. Civ. P. 50…………………………………………………...…17

Fed. R. Civ. P. 56……………………………………………………..17

RESTATEMENTS OF LAW

Restatement (Second) Conflict of Laws § 142………………..……39, 47-48

## STATEMENT OF THE ISSUES

1. Whether the District Court correctly held that Plaintiff-Appellant Sheldon Stephens's ("Stephens") federal claims against Defendant-Appellee Kevin Clash ("Clash"), alleging unlawful sexual contact with a minor in violation of 18 U.S.C. §§ 2422 and 2423, and a right of action and damages under 18 U.S.C. § 2255(a), are both time-barred, where: (a) the statute of limitations requires at 18 U.S.C. § 2255(b) that such claims be brought "within six years after the right of action first accrues" *or* "not later than three years after" a plaintiff turns eighteen; and (b) both of Stephens's claims were brought more than six years after the latest possible right of action first accrued *and* more than three years after Stephens turned eighteen.

2. Whether the District Court correctly held that, even assuming without deciding a discovery rule applies to Section 2255 sexual abuse claims, they are time-barred because: (a) Stephens filed suit more than six years after he was aware of facts sufficient to state a claim under § 2255, and more than three years after he turned eighteen, and (b) the subjective and objective components of discovery both existed at the time of the alleged sexual contact.

3. Whether the District Court correctly held that Pennsylvania's "borrowing statute," 42 Pa. Cons. Stat. § 5521(b), requires that New York's one-year

1

statute of limitations for battery, N.Y. C.P.L.R. 215(3), and New York's infancy tolling statute, N.Y. C.P.L.R. 208, be applied to Stephens's state law claim for sexual battery where the battery is expressly alleged to have occurred in New York.

STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously. The District Court for the Southern District of New York (Koeltl, J.) previously dismissed factually similar and almost legally identical cases filed against Clash by Stephens's current counsel on behalf of three other plaintiffs, Singleton v. Clash, Nos. 12 Civ. 8465 (JGK), 12 Civ. 8948 (JGK), 13 Civ. 2172 (JGK), 2013 U.S. Dist. LEXIS 92088 (S.D.N.Y. July 1, 2013), and the Court of Appeals for the Second Circuit affirmed the dismissal by summary order dated March 10, 2014. S.M. v. Clash, 558 Fed. Appx. 44 (2d Cir. 2014).

STATEMENT OF THE CASE

Stephens alleges that Clash had sexual relations with him when Stephens was a minor, thus violating 18 U.S.C. §§ 2422 and 2423 and committing battery. Joint Appendix ("JA") 45-47.

Claims under 18 U.S.C. §§ 2422 and 2423 are actionable under 18 U.S.C. § 2255(a). The statute of limitations for such claims, 18 U.S.C. § 2255(b), is "six years after the right of action first accrues or in the case of a person under a legal

2

disability, not later than three years after the disability[.]" Accordingly, the statute of limitations has two features, a standard six-year period from accrual of the right of action, and a period while the alleged victim is a minor. Section 2255(b) was amended on March 7, 2013 to lengthen the six-year component to ten years, but such amendment was *not* made retroactive and therefore does not apply to Stephens's claims. Stephens did not contest this issue before the court below, JA 25 n.8; First Op. *12 n.8, and does not challenge the District Court's conclusion. See Point I(C). Unless otherwise noted, references to § 2255(b) are to the version of the statute in effect before the amendment.

Under 18 U.S.C. § 2255(b), a plaintiff has six years after the cause of action accrues, or three years after turning eighteen, whichever period expires later, to file suit. Accordingly, "absent an exception to the statute, the complaint would be time-barred if filed anytime after July 2012." Stephens v. Clash, Civil Action No. 1:13-CV-712, 2013 U.S. Dist. LEXIS 163861, at *12 n.7 (M.D. Pa. Nov. 18, 2013) ( "First Opinion"), JA 9 n.7.

The suit was filed on March 18, 2013, approximately six and a half to eight and a half years after the conduct allegedly occurred, and over six and a half years after Stephens turned eighteen. Stephens v. Clash, Civil Action No. 1:13-CV-712, 2014 U.S. Dist. LEXIS 83550, at *2-3 (M.D. Pa. June 19, 2014) ("Second Opinion"), JA 5-6.

Stephens argues that a discovery rule applies to § 2255, Brief of Plaintiff-Appellant ("Appellant's Brief") 14, despite the "direct and proximate" injuries that were suffered because of sexual conduct with Clash that occurred as early as 2004 and no later than 2006. JA 45, ¶ 23. Stephens claims he did not "become aware" until 2011—and "could not reasonably have been expected to know" before then—that Clash injured him five to seven years earlier. JA 45, ¶ 18.

On May 15, 2013, Clash moved for, among other things, dismissal of Stephens's Complaint. JA 38. On November 18, 2013, Chief Judge Conner issued his First Opinion granting Clash's motion to dismiss Stephens's federal claims as time-barred. JA 16-35.

Judge Conner requested briefing regarding subject matter jurisdiction over Stephens's state law battery claim. JA 35; First Op. *28. The parties stipulated and Judge Conner ordered that the District Court had subject matter jurisdiction over that claim and that Stephens could serve an amended complaint. JA 49-51.

Stephens filed his Amended Complaint on December 2, 2013, asserting only the battery claim. JA 52-57. Clash moved to dismiss the Amended Complaint on December 30, 2013. JA 39. Judge Conner granted Clash's motion on June 19, 2014, and dismissed the Amended Complaint. JA 3; Second Op. *16-17. The Judge held that Pennsylvania's "borrowing statute," 42 Pa. Cons. Stat. § 5521(b), requires application of New York's one-year statute of limitations for battery, N.Y.

C.P.L.R. 215(3), and its infancy tolling statute, N.Y. C.P.L.R. 208. JA 12, 14; id. at

*12, *16. Because the one-year statute expired in July 2007, and even with infancy

tolling would have expired in July 2007, and Pennsylvania battery law did not

apply, the battery claim was untimely as a matter of law. JA 14; id. at *16.

Stephens filed his Notice of Appeal on July 16, 2014.

## STATEMENT OF FACTS

Stephens was born in July 1988, JA 43, ¶ 9, turned 18 in July 2006, turned

21 in July 2009, and filed his original Complaint in March 2013, JA 37, almost

seven years after the last possible date any statutory violation could have occurred

and almost four years after the three-year tolling period would have expired.

Stephens alleges he engaged in sexual activity with Clash beginning "in or about

2004," when Stephens was 16, and that he suffered damages "[a]s a direct and

proximate result." JA 54-56, ¶¶ 13, 16, 22.

Although Stephens claimed that because he was a "compliant victim," he

"did not become aware of his injuries, nor was he able to make a causal connection

between his injuries and the sexual acts of CLASH until 2011," JA 55, ¶¶ 16-17,

the term "compliant victim" is nowhere defined in the relevant statutes or by

Stephens.

The operative dates vis-à-vis the statutes of limitations are encapsulated here

based upon Stephens's Complaint, JA 43-44, ¶¶ 9, 14:

| Date of Birth | July 1988 |
|---|---|
| Date of Alleged Conduct | "[O]ver a period of years" beginning in 2004 and presumed to have continued until July 2006 |
| Date Turned Eighteen | July 2006 |
| Latest Date Based on One Year After Turning Eighteen | July 2007 |
| Latest Date Based on Three Years After Turning Eighteen | July 2009 |
| Latest Date Based on Six Years After Right of Action Accrued | July 2012 |
| Date Complaint Filed | March 18, 2013 |

Based on these dates, Judge Conner held that: (a) Stephens's federal claims were not timely, as "[t]he complaint was not filed until March 18, 2013, almost seven years after the cause of action accrued," JA 31; First Op. *22; and (b) Stephens's battery claim was not timely, as it was "subject to New York's one-year statute of limitations after reaching the age of majority[, and] [h]ere, Stephens turned eighteen in July 2006, but he failed to file his claim until March 2013." JA 12, Second Op. *12.

Judge Conner also calculated the last date on which any federal claim could have been filed, and concluded that "absent an exception to the statute, the complaint would be time-barred if filed anytime after July 2012." JA 24 n.7; First Op. *12 n.7. Before holding that New York's statute of limitations applied, Judge Conner noted, "absent an exception to the statutes of limitation," even if

6

Pennsylvania's two-year statute applied, "the complaint would be time-barred if filed anytime after July 2008." JA 9 n.4; Second Op. *8 n.4.

## SUMMARY OF THE ARGUMENT

The decisions of the court below, dismissing Stephens's claims with prejudice, should be affirmed. As shown at Point I(A), Stephens's federal claims are time-barred as a matter of law under either the six-year or the three-year statutes of limitations of 18 U.S.C. § 2255. As shown at Point I(B), no discovery rule applies to claims of sexual abuse under § 2255, and Stephens cites no case that has applied a discovery rule to § 2255. Not only did Congress not include a discovery rule in the statute (Point I(B)(1)), it intended that the statute *not* have a discovery rule implied (Point I(B)(2)). Point I(B)(3) shows that Stephens's arguments to the contrary are meritless. Point I(C) shows that the 2013 amendment to § 2255(b), which enlarged the time to file, does not apply here.

As shown in Point II, even if a discovery rule applied to § 2255, and none does, Stephens's federal claims would *still* be time-barred. Stephens pleaded facts showing he knew immediately upon the alleged statutory violations, and thus was subjectively aware, that he had suffered injuries as a result of engaging in sexual activity with Clash. Under an objective standard, Stephens was on inquiry notice of his alleged injuries at the time of the alleged statutory violations. See Point II(A). Point II(B) demonstrates that the authorities Stephens cites in arguing that his

7

federal claims are timely under a discovery rule are all either inapposite, distinguishable, or actually support Clash.

As shown in Point III, Judge Conner correctly held that Pennsylvania's "borrowing statute," 42 Pa. Cons. Stat. § 5521(b), requires application of New York's one-year statute of limitations for battery, N.Y. C.P.L.R. 215(3), and its infancy tolling statute, N.Y. C.P.L.R. 208, to the battery claim. JA 12, 14; id. at *12, *16. Because the one-year statute expired in July 2007, and even with infancy tolling, the statute would still expire in July 2007, and the Pennsylvania tolling rule did not apply, it was untimely as a matter of law. JA 14; id. at *16.

## ARGUMENT

The grant of a Rule 12(b)(6) motion to dismiss is reviewed *de novo*. City of Edinburgh Council v. Pfizer, Inc., 754 F.3d 159, 166 (3d Cir. 2014).

## POINT I

### STEPHENS'S FEDERAL CLAIMS ARE TIME-BARRED BY THE VERY STATUTE UNDER WHICH HE SUES

A.    Stephens's Federal Claims Are Untimely
       Under the Plain Text of 18 U.S.C. § 2255(b)

Stephens's federal claims for relief are based on 18 U.S.C. § 2255(a), which provides for a right of action and damages for violations of 18 U.S.C. §§ 2422 and 2423. JA 46-47, ¶¶ 24-33. The statute of limitations for § 2255(a) is § 2255(b), and provides: "Any action commenced under this section shall be barred unless the

complaint is filed within six years after the right of action first accrues or in the case of a person under a legal disability, not later than three years after the disability[.]" 18 U.S.C. § 2255(b) (2006).

In Singleton at *13, the court summarized Supreme Court jurisprudence on the meaning of "accrual":

> "In common parlance a right accrues when it comes into existence . . . ." Gabelli v. SEC, 133 S. Ct. 1216, 1220, 185 L. Ed. 2d 297 (2013) (quoting United States v. Lindsay, 346 U.S. 568, 74 S. Ct. 287, 98 L. Ed. 300, (1954)). "Thus the 'standard rule' is that a claim accrues 'when the plaintiff has a complete and present cause of action.'" Id. (quoting Wallace v. Kato, 549 U.S. 384, 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973, (2007) (internal quotation marks omitted)).

In Wallace, the Supreme Court stated a plaintiff has "a complete and present cause of action" "when 'the plaintiff can file suit and obtain relief.'" 549 U.S. at 388 (quoting Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201, 118 S. Ct. 542, 139 L. Ed. 2d 553 (1997)).

Here, Stephens could have filed suit and obtained relief immediately upon the alleged statutory violations. Therefore, Stephens had a complete and present cause of action—and his claims accrued—as soon as such alleged violations occurred.

Stephens did not file his Complaint within six years after the right of action first accrued or within three years of having the only legal disability pleaded, i.e., being a minor. For this reason alone, the dismissal of Stephens's federal claims as

time-barred was proper. Stephens therefore admits—as he must—that "absent delayed accrual," his federal claims are untimely. Appellant's Br. 15 n.9.

**B.     No Delayed Accrual or Discovery Rule Applies**
        **to Sexual Abuse Claims Brought Under 18 U.S.C. § 2255**

The court below did not determine whether a discovery rule applies to sexual abuse claims under 18 U.S.C. § 2255, and it did not have to, as, "[a]ssuming *arguendo* that the discovery rule is applicable to Stephens' federal claims," they were still untimely. JA 26; Second Op. *15. The text of 18 U.S.C. § 2255(b) demonstrates that the statute of limitations does not contain a discovery rule, and principles of statutory construction show that one should not be inferred.

**1.     Congress Did Not Include a Discovery Rule in 18 U.S.C. § 2255**

On its face, § 2255(b) does not contain a discovery rule, in sharp contrast to statutes of limitations that *do*.

Although no circuit court has ruled on the issue (the Second Circuit did not reach the issue, S.M., 558 Fed. Appx. at *45), "[t]wo federal district courts . . . have considered whether the discovery rule applies to claims brought under § 2255, and both have declined to apply it." Shovah v. Mercure, Case No. 2:11-cv-201, 2014 U.S. Dist. LEXIS 119290, at *10 (D. Vt. Aug. 27, 2014) (citing Singleton at 585 and Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc., Case No. 10-CV-4124, 2013 U.S. Dist. LEXIS 180463 (W.D. Ark. Dec. 24, 2013)).

In contrast to § 2255(b), the court in <u>Singleton</u> provided examples of federal statutes of limitations that do contain a discovery rule. <u>Singleton</u> at *17-18 (citing 28 U.S.C. § 1658(b) ("discovery of the facts"); 18 U.S.C. § 2520(e) ("reasonable opportunity to discover the violation"); 28 U.S.C. § 2409a(g) ("knew or should have known of the claim")).

Section 2255(b) contains *no* language indicative of a discovery rule, such as "discover," "knew or should have known," or similar language. As the court in <u>Kolbek</u> wrote:

> [T]here is no indication that the 'discovery' rule applies to § 2255. The statute clearly provides that a claim must be filed within six years of the injury accruing. It contains no language inferring that a claim does not accrue until the effect of the injury is discovered by a plaintiff.

<u>Kolbek</u> at *45 n.13. The <u>Kolbek</u> court followed <u>Singleton</u>, which held, "The statute is directed solely to when the claim accrues, not when it is discovered." <u>Singleton</u> at *12-13.

Stephens does not and cannot argue that the plain meaning of § 2255(b) is that it contains a discovery rule, and instead relies on a tortured interpretation argument to claim that it should be read to provide for one anyway. Appellant's Br. 14 n.8. The <u>Singleton</u> court rejected this argument, and so should this Court.

2.    Congress Intended for 18 U.S.C. § 2255
      to Not Have a Discovery Rule

Thus, there is no discovery rule in § 2255(b). Beyond this, Congress

affirmatively intended that § 2255(b) not have one inferred.

a.    Absence of an Express Prohibition of a Discovery Rule
      Does Not Imply Endorsement of a Discovery Rule

"[T]he cases in which a statute of limitation may be suspended by causes not

mentioned in the statute itself . . . are very limited in character, and are to be

admitted with great caution; otherwise the court would make the law instead of

administering it." Gabelli v. SEC, 133 S. Ct. 1216, 1224, 185 L. Ed. 2d 297 (2013)

(internal quotation marks omitted).

In Singleton, the court described Supreme Court jurisprudence on discovery

rules:

> The Supreme Court recently explained that the discovery rule is "an
> exception to the general limitations rule that a cause of action accrues
> once a plaintiff has a 'complete and present cause of action.'" Merck,
> 130 S. Ct. at 1793 (quoting Bay Area Laundry and Dry Cleaning
> Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201, 118 S.
> Ct. 542, 139 L. Ed. 2d 553 (1997)). However, the Supreme Court has
> also noted that although "lower '[f]ederal courts . . . generally apply a
> discovery accrual rule when a statute is silent on the issue[,]'" the
> Court "[has] not adopted that position." TRW Inc. v. Andrews, 534
> U.S. 19, 27, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001) (quoting
> Rotella, 528 U.S. at 555). The Supreme Court has "never endorsed the
> . . . view that Congress can convey its refusal to adopt a discovery rule
> only by explicit command," and other than in cases of fraud or
> concealment, it has recognized a discovery rule only in two contexts,
> latent disease and medical malpractice, "where the cry for such a rule

is loudest." Id. at 27-28 (internal quotation marks and alteration omitted).

Singleton at *14-15. Thus, discovery rules are the *exception*, and they are not to be inferred by default.

>    b.    Congress Intended for § 2255(b) to *Not* Have a Discovery Rule

There are at least three canons of construction that demonstrate Congress's intent that the courts apply no discovery rule to § 2255(b).

First, the inclusion of one exception to the six-year statute of limitations, for plaintiffs under a legal disability, indicates that Congress intended for § 2255(b) to not have any other exceptions, including a discovery rule:

> The exception extends the statute of limitations to three years after the disability ends, regardless of when the violation occurred, an explicit expansion of the six year limitations period. *Moreover, this exception is plainly crafted to afford minors at least three years after attaining the age of eighteen to contemplate whether they choose to sue for conduct committed against them while they were minors. This exception counsels against implying an additional discovery rule into the statute.*

Id. at *15 (emphasis added).

One would not expect Congress to create a fixed, objective, six-year rule, with only one fixed, objective, three-year exception, if it also meant to create a different and completely subjective exception which swallows both the original six-year rule and the three-year exception. Stephens's "theory would allow Section 2255 claims decades beyond when the violation accrued." Id. at *27.

13

Second, Congress has drafted statutes of limitations including discovery rules, and would have done so in § 2255(b) had it intended for one to apply. See id. at *17-18.

Third, Congress was aware of the inclusion of express discovery rules in various state statutes of limitations for childhood sexual abuse, but chose to not include one in § 2255(b). See id. at *18-19. The Singleton court specifically referenced such state statutes, and concluded that instead of a discovery rule:

> Congress provided an exception to the six year prohibition for plaintiffs under a legal disability and provided that such minors would have an additional three years to bring a claim after they turned eighteen.

Id. at *19.

The Singleton court continued:

> This exception, combined with Congress's failure to adopt a discovery rule in the face of statutes with explicit discovery rules and state sexual abuse statutes providing for application of a discovery rule, indicate that Congress did not provide for a discovery rule under *Section 2255*, and none should be implied.

Id. at *19.

3.    <u>Stephens's Arguments for Implying a Discovery Rule Are Unavailing</u>

a.    Stephens's Federal Claims Accrued
at the Time of the Alleged Statutory Violations

Stephens's claims accrued immediately upon the alleged statutory violations, and his attempt to create a new exception to the established judicial understanding of the word "accrues" is meritless.

Stephens cites <u>United States v. Kubrick</u>, 444 U.S. 111, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979), <u>Urie v. Thompson</u>, 337 U.S. 163, 69 S. Ct. 1018, 93 L. Ed. 1282 (1949), and <u>White v. Mercury Marine, Division of Brunswick, Inc.</u>, 129 F.3d 1428 (11th Cir. 1997). Appellant's Br. 14 n.8. These cases "do not help [plaintiffs'] position." <u>Singleton</u> at *28-29, JA 49.

Here, Stephens seeks *invention* of a discovery rule for claims based on conduct that was known to be in violation of the law when it occurred, i.e., sexual activity with a minor. But here, as in <u>Singleton</u>, "the plaintiffs knew of their injuries, namely their victimization under the statute, and its cause, namely the defendant. Therefore, the claims accrued at that time." <u>Id.</u> at *29.

In latent injury and defect cases, plaintiffs often do not know the critical facts of injury and causation until long after a violation occurs. Here, however, Stephens does not claim to have suffered latent injury or anything else for which a discovery rule has been applied, including repressed memory. Instead, he claims to

have suffered "direct and proximate" injuries as a result of sexual conduct with Clash.

Stephens attempts to gloss over the critical distinction between claims for latent injuries and claims such as his, pointing to the irrelevant fact that the language in § 2255(b) barring actions filed six years "after the right of action first accrues" is similar to language found in the statutes involved in <u>Urie</u> and <u>Kubrick</u>. Appellant's Br. 14 n.8.

Stephens ignores the fact that the similar language describes the statute of limitations, not the method of accrual. This is apparent from the fact that it assumes that a determination has already been made as to when the "right of action first accrue[d]." As for statutory context, Stephens cites statutes concerning latent injuries, as opposed to "direct and proximate" injuries, so his argument fails as a matter of law and logic.

Stephens seeks judicial creation of a discovery rule for "compliant victims," potential plaintiffs under 18 U.S.C. §§ 2422 and 2423 with no distinguishing characteristic other than their status as minors. That is, Stephens claims that simply because he was a minor when the alleged violations occurred, he could not reasonably have known that the person who caused his direct and proximate injuries from sexual activities was the person with whom he had sex. JA 45, ¶¶ 17-

16

18. If Congress agreed with this circular and illogical position, it could have included a provision that addressed it.

  b.  Strong Policy Considerations Militate
     Against Recognition of a Discovery Rule

Expanding the federal discovery rule for plaintiffs such as Stephens, who immediately and at all times know of both the alleged injury and the person who allegedly inflicted it, would invite a flood of frivolous litigation. Any plaintiff, anytime, anywhere, with any relationship to Delaware, New Jersey, Pennsylvania, or the United States Virgin Islands, could track the boilerplate language of the Complaint here and start litigation against anyone for any reason. Stephens's "compliant victim" theory could presumably apply decades after the conduct alleged, as it would not depend on any objective fact that would be susceptible to being proved or disproved.

If such allegations were allowed to survive a motion to dismiss, they would presumably also survive a motion for summary judgment, because plaintiffs would argue that a defendant's denials would only create a triable issue of fact. See Fed. R. Civ. P. 56. Still further, every case would presumably have to be sent to a jury, because plaintiffs would argue their claims had a sufficient evidentiary basis as a matter of law. See Fed. R. Civ. P. 50.

Not only would the issues in these cases involve needlessly complicated factual discovery and analysis, but even the most extensive discovery, to the extent

it was available after such long delays, would not avoid the problems of adjudicating the inherently subjective nature of Stephens's "delayed discovery" claims. The court in <u>Shovah</u> described the dilemma:

> Shovah alleges that he was unable to discover with due diligence his psychological injuries because of the psychological injuries caused by the abuse. Shovah's explanation for the delay in discovery has a circularity that could extend the accrual date indefinitely. This contradicts the express language of the statute, as it essentially nullifies the statute of limitations itself.

<u>Shovah</u>, 2014 U.S. Dist. LEXIS 119290, at *19.

How could any trier of fact ever determine whether, when, and under what circumstances a particular plaintiff, who immediately and at all times thereafter knew of the alleged injury and the person who inflicted it, became aware of the "connection" between those facts? The inherently subjective nature of the so-called "connecting of the dots" would invite legions of psychiatrists and other experts to render opinions that would at most be educated guesses based on the self-reporting of various plaintiffs, all without any mechanism for testing or rebutting.

Allowing stale claims to be aired at will would disincentivize plaintiffs from asserting timely claims, and actually encourage plaintiffs with invalid claims to delay asserting them. Stephens's argument that a statute of limitations for compliant victims does not apply to compliant victims should be rejected.

C.    The 2013 Amendment to § 2255
      Did Not Resuscitate Stephens's Stale Claims

On March 7, 2013, eleven days before Stephens filed his Complaint, § 2255 was amended to extend the statute of limitations from six years to ten years. Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, § 1212(a)(2), 127 Stat. 54, 143 (codified as amended at 18 U.S.C. § 2255(b)).

The amendment cannot be applied retroactively to revive Stephens's stale claims. See JA 25 n.8; First Op. *12 n.8 (noting amendment, but performing analysis under six-year statute of limitations). Stephens does not contend otherwise. See Appellant's Br. 14 n.7 (noting amendment without further comment). "When claims have expired under an effective statute of limitations, an amendment extending the statute of limitations will not be applied retroactively to revive stale claims unless it is the clear intent of Congress to revive such claims." Singleton at *32; see also Shovah, 2014 U.S. Dist. LEXIS 119290, at *8 n.5, which was decided after Singleton and cited it with approval in connection with the issue of retroactivity.

<u>POINT II</u>

EVEN UNDER A DISCOVERY RULE,
<u>STEPHENS'S FEDERAL CLAIMS WOULD BE TIME-BARRED</u>

Judge Conner correctly held that even assuming, *arguendo*, that a discovery rule applied to the statute of limitations under 18 U.S.C. § 2255(b), Stephens's federal claims were time-barred. JA 31; First Op. *22.

A.    <u>Discovery Occurred at the Time of the Alleged Violations</u>

Even if a discovery rule applied to 18 U.S.C. § 2255, and one does not, Stephens's discovery of his injuries and the identity of the person who inflicted them occurred immediately upon the alleged statutory violations. Thus, even under a discovery rule, Stephens's claims would all be time-barred.

"Under the discovery rule, a cause of action accrues when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." <u>William A. Graham Co. v. Haughey</u>, 568 F.3d 425, 433 (3d Cir. 2009) (internal quotation marks omitted).

"The first step in applying the discovery rule to determine the accrual date is to establish when the injurious conduct, as defined by the relevant statute, actually occurred." JA 26; First Op. *15 (citing <u>Disabled in Action of Pa. v. Se. Pa. Transp. Auth.</u>, 539 F.3d 199, 214 (3d Cir. 2008)). "In this case, the relevant conduct is the violation of the criminal statutes that constitute the basis for Stephens' Section 2255 claims." JA 26; <u>id.</u> at *16.

"The second step is to determine whether the plaintiff could immediately discover the related injury, or whether there was another date when the plaintiff should have reasonably discovered the injury with due diligence." JA 26; id. (citing Disabled in Action of Pa., 539 F.3d at 214). The latter determination is composed of "both subjective and objective components." JA 27; id. (citing Mathews v. Kidder Peabody & Co., 260 F.3d 239, 250 (3d Cir. 2001)).

As shown below, although he could have concluded that Stephens's claims were barred under *either* the subjective *or* objective discovery test, Judge Conner found that the claims were barred under *both* tests.

1.    Stephens Discovered His Alleged Injuries
       and Their Cause Immediately

"On one hand, a claim accrues no later than when a plaintiff subjectively discovers his or her injuries." JA 27; id. at *17 (citing Mathews at 250). "[T]he relevant inquiry for Section 2255 claims is not when a plaintiff discovered subsequent harm, but rather when the plaintiff discovered that he was the defendant's victim under the underlying criminal statutes." Id.

"Whoever knowingly persuades, entices, induces, or coerces any individual to travel in interstate . . . commerce . . . to engage in . . . any sexual activity for which any person can be charged with a criminal offense . . . shall be fined under this title or imprisoned . . . ." 18 U.S.C. § 2422(a). Stephens was immediately

aware he was a minor, Clash was an adult, and Clash persuaded him to travel to engage in sexual activity with him. JA 44, ¶¶ 12-14.

"A person who knowingly transports an individual who has not attained the age of 18 years in interstate . . . commerce . . . with the intent that the individual engage in . . . any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned . . . ." 18 U.S.C. § 2423(a). Stephens was immediately aware he was a minor, Clash was an adult, and Clash transported him to engage in sexual activity with him. JA 44, ¶¶ 12-14.

Although Stephens did not identify when the alleged violations ended, they could not have continued beyond July 2006, when he turned 18. <u>See</u> JA 27; First Op. *16.

"A victim by definition is someone who suffers an injury. *A plaintiff suffers injuries for purposes of Section 2255 at the same time he or she becomes a victim of a defendant's criminal conduct.*" JA 28; <u>id.</u> at *18 (citing <u>Doe v. Boland</u>, 698 F.3d 877, 881-82 (6th Cir. 2012)) (emphasis in original) (internal citation omitted); <u>see also</u> <u>Singleton</u> at *22-23; <u>Shovah</u> at *12-13.

Therefore:

Stephens became a victim and was injured when Clash violated certain criminal statutes. Stephens' assertion that he did not know about his psychological and emotional injuries and their relation to Clash's conduct until 2011 is irrelevant; the court finds that Stephens was a victim of the injurious conduct, and thus aware of his injuries, when it occurred between 2004 and July 2006.

22

JA 28; First Op. *18 (internal citation omitted).

Because Stephens was subjectively aware of his injuries and their cause no later than July 2006, his federal claims were barred by the six-year statute of limitations in § 2255(b).

### 2.    Stephens Was on Inquiry Notice of His Alleged Injuries and Their Cause Immediately

Although he did not have to do so, Judge Conner also showed that Stephens's federal claims were untimely under the *objective* component of the discovery rule, under which the court must objectively determine when the plaintiff had sufficient information of wrongdoing to either (a) place him on "inquiry notice" or (b) excite "storm warnings." JA 27; id. at *17.

"Inquiry notice exists 'whenever circumstances exist that would lead a reasonable [person] of ordinary intelligence, through the exercise of reasonable due diligence, to discover his or her injury.'" JA 28-29; id. at *18 (quoting Mathews, 260 F.3d at 251). The determination of inquiry notice entails a two-part burden-shifting test. JA 29; id.

"First, the burden is on the defendant to show the existence of 'storm warnings,' which are indications or information that would alert a reasonable person to the probability of suspicious circumstances." Id. "The determination of

whether storm warnings are present is an objective inquiry." JA 29; id. at *20 (citing Mathews, 260 F.3d at 252).

"Storm warnings were no doubt present when the violations at issue here occurred." Id. In short, "a reasonable person would have been alerted to culpable activity when a teenager traveled across state lines and participated in sexual and other illicit activity with an adult." Id.

The burden therefore shifted to Stephens "to show that, despite heeding those warnings and exercising reasonable diligence to investigate the suspicious circumstances, [he] was unable to discover his . . . injuries." JA 29; id. at *18.

Stephens failed to meet his burden, and was charged with inquiry notice. JA 29-31; id. at *21-22. Judge Conner rejected Stephens's "compliant victim" theory that "he could not reasonably be expected to be aware of his injuries and their causal connection to Clash's conduct until 2011." JA 30-31; id. at *20-21; see also Singleton at *25 (observing "plaintiffs' argument for delayed accrual based on a 'connection' between their injuries and the defendant's conduct is wholly subjective"). "There is simply no indication that Stephens exercised any diligence in questioning the illicit sexual conduct or related injuries," and "[s]uch failure is not reasonable to justify delayed discovery of his injuries, nor is it reasonable to delay accrual of the cause of action." JA 30; First Op. *21 (citing Kubrick, 444 U.S. at 122-23).

Thus, Stephens was on inquiry notice of his injuries and their cause at the time of the alleged statutory violations, i.e., no later than July 2006, and his federal claims were untimely when they were filed in 2013. JA 31; id. at *22.

Stephens fails to show why this Court should depart from Judge Conner's well-reasoned, logical, and correct determination that even under a discovery rule, Stephens's claims would have accrued immediately upon the alleged statutory violations.

B.    Stephens Offers No Reason to Reverse the Lower Court's Holding
       That His Federal Claims Would Be Untimely Under a Discovery Rule

Stephens argues he "did not reasonably discover his injuries and their cause as Clash's sexual abuse until 2011 . . . ." Appellant's Br. 10. As noted, however, the court below held "Stephens was a victim of the injurious conduct, and thus aware of his injuries, when it occurred between 2004 and July 2006." JA 28; First Op. *18.

The cases Stephens cites are all distinguishable, inapposite, or actually support Clash. Kronisch v. United States, 150 F.3d 112 (2d Cir. 1998) involved claims based on alleged testing of LSD on the decedent by the CIA without the decedent's knowledge or consent. 150 F.3d at 116. The decedent became aware of the testing program only twenty-five years later, and had no reason to suspect that the CIA had caused his injuries until then. Id. at 121. Here, the circumstances are not remotely analogous, as Stephens alleged that he traveled and engaged in sexual

activity with Clash, and that he "suffered physical, psychological and emotional damages" as a "direct and proximate result" of such activity. JA 45, ¶ 23.

As Stephens admits, <u>Bohus v. Beloff</u>, 950 F.2d 919 (3d Cir. 1991) involved the Pennsylvania discovery rule, Appellant's Br. 16, and *not* the federal discovery rule. <u>Bohus</u> is therefore inapposite. It would be particularly inappropriate to apply the Pennsylvania discovery rule here since Pennsylvania courts have consistently rejected attempts to apply a discovery rule in cases asserting belated awareness of sexual abuse. (See Point III(B)(2)(a).) Finally, even if the Pennsylvania discovery rule applied, Stephens's Complaint showed that he knew of his alleged injury and its cause as soon as it occurred, so his federal claims would still be time-barred.

Stephens also argues that Judge Conner misapplied <u>Doe v. Boland</u> because that case did not involve a discovery rule. Appellant's Br. 16-17. However, <u>Boland</u>'s discussion of the terms "victim" and "personal injury" for purposes of § 2255 is relevant here because Stephens, like the defendant in <u>Boland</u>, is attempting to draw a distinction where none exists. The simultaneity of Stephens's victimhood and injuries is apparent from his Complaint and from the language of § 2255(a), which provides for presumptive damages for statutory violations. See <u>Singleton</u> at *21-22. Indeed, because of this provision, "there is no need to show specific damages under the statute, [and] it is the victimhood alone—and not any resulting effects—that forms the basis of a § 2255 action." <u>Shovah</u> at *12.

Stephens mistakenly relies on Gabelli, 133 S. Ct. 1216, a fraud case involving concealment, for the proposition that "The discovery rule exists in part to preserve the claims of victims who do not know they are injured and who reasonably do not inquire as to any injury." Appellant's Br. 17 (quoting Gabelli, 133 S. Ct. at 1222). Stephens immediately knew he was injured, as shown by his own Complaint. The very same quote continues, "Usually when a private party is injured, he is immediately aware of that injury and put on notice that his time to sue is running," Appellant's Br. 17-18 (quoting Gabelli, 133 S. Ct. at 1222), precisely the situation here.

Stephens also quotes, "*But when the injury is self-concealing, private parties may be unaware that they have been harmed*," Appellant's Br. 18 (quoting Gabelli, 133 S. Ct. at 1222) (emphasis in original), but Stephens claimed he suffered injuries as a "direct and proximate result" of engaging in sexual activity with Clash, so the alleged injuries were clearly *not* self-concealing.

Stephens's reliance on Schmidt v. Skolas, No. 13-3750, 2014 U.S. App. LEXIS 19889 (3d Cir. Oct. 17, 2014) is similarly misplaced. Schmidt is a case "where the applicability of the discovery rule is not evident on the face of the complaint *but the plaintiff also does not plead facts that unequivocally show that the discovery rule does not apply*." Schmidt at * 19 (emphasis added). Thus, the Court distinguished Schmidt from cases where, as here, "the plaintiff effectively

pleads herself out of court by alleging facts that are sufficient to establish the defense." Id. at *19-20 (quoting Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006)).

In Hollander, the Court of Appeals for the Seventh Circuit held the Illinois discovery rule did not apply to claims arising from an alleged sexual assault where the plaintiff argued that "the psychological trauma of the rape made discovery of her full injury a slow and lengthy process," but did not claim repressed memory. 457 F.3d at 693. The plaintiff alleged suffering "at least some injuries at the time of the incident," and "Illinois law presumes a resulting injury from unwanted touching and unlawful restraint." Id. Therefore, the plaintiff "could have filed suit within the limitations period." Id. The discovery rule did not apply because the plaintiff was "not a plaintiff who failed to discover *any* injury, but a plaintiff who failed to discover the full extent of her injuries before the statute of limitations expired." Id. (emphasis in original).

Here, the applicability of the discovery rule is not evident on the face of the complaint, but Stephens *does* plead facts that unequivocally show the discovery rule does not apply. The parallels with Hollander are striking. Stephens was immediately aware of facts constituting violations of 18 U.S.C. §§ 2422 and 2423. Since § 2255(a) provides for presumptive damages for such violations, Stephens could have filed suit within the limitations period. Moreover, like the Illinois

discovery rule discussed in <u>Hollander</u>, federal law provides that "[u]nder the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable." <u>Wallace</u>, 549 U.S. at 391 (citation omitted). Therefore, the discovery rule is inapplicable to Stephens, who, like the plaintiff in <u>Hollander</u>, was "not a plaintiff who failed to discover *any* injury, but a plaintiff who [allegedly] failed to discover the full extent of [his] injuries before the statute of limitations expired."

Stephens suggests this is not a case where the facts relevant to discovery are "so clear that reasonable minds *cannot differ*." Appellant's Br. 19 (quoting <u>Schmidt</u> at *18) (emphasis in original). However, this case is not analogous to either <u>Schmidt</u>, which involved a claimed breach of fiduciary duty, or <u>Crouse v. Cyclops Industries</u>, 560 Pa. 394, 745 A.2d 606 (2000), which involved a claim of promissory estoppel and was the source of <u>Schmidt</u>'s "cannot differ" language. Whereas <u>Schmidt</u> and <u>Crouse</u> involved allegations of deception and/or broken promises inviting a factual inquiry to determine when discovery occurred, Stephens has pleaded knowledge of facts which would have permitted him to sue immediately upon the alleged statutory violations. Reasonable minds *cannot* dispute that Stephens has alleged he knew at the time of the alleged violations that

he was a minor, Clash was an adult, and Clash persuaded him to travel to and transported him to New York to have sex with him. JA 44, ¶¶ 12-14.

Stephens's claim that "there is nothing in the Complaint to indicate that Stephens discovered his injury and its cause outside the limitations period" is therefore absurd on its face. Stephens's further claim that he "did not know and could not have reasonably been expected to know that he had been injured and that Clash caused his injuries at the time of their sexual contact" should also be rejected as a bare legal conclusion contradicted by Stephens's own allegations.

Davis v. Grusemeyer, 996 F.2d 617 (3d Cir. 1993) and Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481 (3d Cir. 1985), cited in Appellant's Brief at 19 n.11, also provide no support for Stephens. In Davis, the court rejected the plaintiff's claim of fraudulent concealment, 996 F.2d at 622, holding that "on the face of the complaint, [the plaintiff] was on notice of the operative facts forming the basis of his RICO claims by December 1986," making his claims untimely. Id. at 625. Van Buskirk is inapposite, as it was a latent injury case in which the dispute as to discovery accrual concerned the sufficiency of trial evidence, not the pleadings. 760 F.2d at 498.

In Barefoot Architect, Inc. v. Bunge, 632 F.3d 822 (3d Cir. 2011), cited in Appellant's Brief at 20-21, "[t]he date of discovery [was] not evident from the face of the counterclaim . . . ." 632 F.3d at 835. Barefoot Architect is inapposite, as

30

Stephens pleaded facts showing that discovery occurred immediately upon the alleged statutory violations.

Stephens argues he was not required to plead having exercised reasonable diligence in attempting to discover his injuries and their cause. Appellant's Br. 21-22. Thus, he attempts to shift the focus from what he *did* plead, namely, facts showing that he was immediately aware of his injuries and their cause, to what he *did not* plead, namely, reasonable diligence in discovering facts he already knew.

However, any discussion of "reasonable diligence," which is relevant only to the discovery rule's *objective* test, is unnecessary because Stephens's discovery of his injuries and their cause immediately upon the alleged statutory violations satisfied the discovery rule's *subjective* test.

Under these circumstances, where immediate discovery is apparent, the *objective* test is essentially intended to determine whether Stephens's pleading would have been sufficient if he had not been charged with immediate *subjective* awareness of his injuries and their cause. Judge Conner's list of "storm warnings" essentially consists of allegations showing Stephens was, and had to be, immediately aware of the statutory violations. See JA 29; First Op. *20. In any event, Judge Conner was correct in finding that "[t]here is simply no indication that Stephens exercised *any* diligence in questioning the illicit sexual conduct or related injuries." JA 30; id. (emphasis added).

Although the court in <u>Doe v. Paukstat</u>, 863 F. Supp. 884 (E.D. Wis. 1994), cited in Appellant's Brief at 24, made reference to Wisconsin state law as a possible guide to determining accrual under 42 U.S.C. § 1983, the Supreme Court held in <u>Wallace</u>, decided 13 years after <u>Paukstat,</u> that "the accrual date of a § 1983 cause of action is a question of *federal law* that is *not* resolved by reference to state law." 549 U.S. at 388 (first emphasis added).

Stephens pleaded knowledge and discovery of his alleged injuries, and his federal claims accrued immediately upon the alleged statutory violations, making them time-barred.

### POINT III

### STEPHENS'S STATE LAW CLAIM IS GOVERNED AND BARRED BY NEW YORK'S STATUTE OF LIMITATIONS

Judge Conner correctly held that Stephens's state law claim was governed and barred by New York's statute of limitations, and that Pennsylvania's tolling rule for claims of childhood sexual abuse involving forcible compulsion did not apply. JA 14; Second Op. *16.

A.    Pennsylvania Has a "Borrowing Statute" That Determines
      Which State's Statute of Limitations Governs

"A federal court, sitting in diversity, follows the forum's choice of law rules to determine the applicable statute of limitations." <u>Ross v. Johns-Manville Corp.</u>, 766 F.2d 823, 826 (3d Cir. 1985). Thus, Pennsylvania choice of law rules apply to

determine the applicable statute of limitations for the battery claim. JA 10; Second Op. *10.

Pennsylvania has a "borrowing statute," the Uniform Statute of Limitations on Foreign Claims Act, which provides that "[t]he period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place *where the claim accrued* or by the law of this Commonwealth, *whichever first bars the claim*." 42 Pa. Cons. Stat. § 5521(b) (emphasis added).

"The primary effect of borrowing statutes is to prevent a plaintiff from gaining more time to bring an action merely by suing in a forum other than the forum where the cause of action accrued." Gwaltney v. Stone, 387 Pa. Super. 492, 564 A.2d 498, 503 (1989). The borrowing statute "unequivocally evince[s] the legislative intent to prevent a plaintiff who sues in Pennsylvania from obtaining greater rights than those available in the state where the cause of action arose." Id. (quoting Wilt v. Smack, 147 F. Supp. 700, 704 (E.D. Pa. 1957)). Pennsylvania's borrowing statute precludes any further choice of law analysis, including the "most significant contacts" test. See id. ("Even if Pennsylvania in fact had the most significant contacts, *Pennsylvania's* borrowing statute would still require application of *Tennessee's* shorter limitations period, based upon *Pennsylvania's* determination that the limitations period applicable in Pennsylvania should not

exceed that applicable at the situs of the accrual of the cause of action.") (emphasis in original).

It is settled that "the cause arises *where as well as when* the final significant event that is essential to a suable claim occurs." Mack Trucks, Inc. v. Bendix-Westinghouse Auto. Air Brake Co., 372 F.2d 18 (3d Cir. 1966) (emphasis added); see also McGinley v. McGinley, Civil Action No. 04-CV-3500, 2005 U.S. Dist. LEXIS 31739, at *5 (E.D. Pa. Dec. 2, 2005), aff'd, 252 Fed. Appx. 426 (3d Cir. 2007); Gwaltney, 564 A.2d at 503 ("claim accrues when and where the injury is sustained").

The Pennsylvania doctrine—which defines accrual as the point where the "final significant event" of "a suable claim" occurs—compels the conclusion that the claim accrued in New York and is time-barred under New York law.

B.    Pennsylvania's Borrowing Statute Requires
      Application of New York's Statute of Limitations

      1.    The Claim Accrued in New York

Stephens's battery claim accrued in New York. JA 11; Second Op. *10-11. Stephens alleges that he was the victim of sexual battery by forcible compulsion occurring in 2004-2006 in New York. JA 54, ¶¶ 13-14. *Nowhere* does Stephens allege having sex with Clash anywhere but New York, and Stephens had *no* suable claim until the battery—the alleged sex act—occurred in New York.

Thus, aside from the fact that Stephens did not plead forcible compulsion,

34

even if he had, any alleged forcible compulsion would have occurred in New York, and the New York battery was the "final significant event" required to sue. Stephens's claim therefore necessarily accrued when and where the battery occurred, i.e., in 2004-2006 in New York.

### 2. New York's Statute of Limitations Barred the Claim First

"Because the sexual battery claim accrued outside Pennsylvania, the court must determine whether the statute of limitations in New York or Pennsylvania is applicable to the instant action." JA 11. New York's statute of limitations "first barred" Stephens's claim, and therefore must be applied.

#### a. New York's Statute of Limitations for Battery Claims Barred the Claim First

New York's statute of limitations for sexual battery on a child is the one-year statute applicable to battery, N.Y. C.P.L.R. 215(3). See id.; Schmidt v. Bishop, 779 F. Supp. 321, 324 (S.D.N.Y. 1991). New York does not recognize any discovery rule for childhood sexual abuse claims. Bishop at 330 ("declin[ing] to invent a delayed discovery doctrine"). Even assuming the battery occurred on the last day Stephens was a minor, in July 2006, the assumption *most* favorable to Stephens, Stephens's battery claim expired under New York law by July 2007. New York has a tolling rule, N.Y. C.P.L.R. 208, for claims that accrue during infancy, which, for claims with a one-year statute of limitations, tolls the time

within which a claim must be brought during the period of infancy. JA 11-12; Second Op. *11-12. Because of the assumption that the battery occurred on the last day Stephens was a minor, the tolling provision has no effect because the remaining period of infancy, and the resultant period of tolling, both expired the very next day, namely, the day Stephens turned 18 in July 2006.

Even if New York recognized a discovery rule, which it does not, and even if Stephens's claim accrued in 2011 per the conclusory assertions that Judge Conner rejected, JA 24-31; First Op. *17-22 (rejecting assertions repeated at Am. Compl. ¶¶ 16-17), Stephens's claim would have expired one year later, in 2012, and *still* been time-barred by New York's one-year statute because he did not file until 2013.

Pennsylvania has a two-year statute of limitations for battery, 42 Pa. Cons. Stat. § 5524(1). See JA 11; Second Op. *11. Under that statute, Stephens's claim would have expired in July 2008 (two years after Stephens turned 18). Pennsylvania does not recognize any discovery rule for claims of childhood sexual abuse, regardless of the claimed reason for delayed discovery. See Baselice v. Franciscan Friars Assumption BVM Province, Inc., 2005 PA Super 246, 879 A.2d 270, 275 (2005) ("lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations"); E.J.M. v. Archdiocese of Phila., 424 Pa. Super. 449, 622 A.2d 1388, 1389 (1993) (claims "psychological and emotional

injuries" prevented awareness); <u>McD. v. Rosen</u>, 423 Pa. Super. 304, 621 A.2d 128, 131 (1993) (claimed "continuing psychiatric problems"); <u>Curran v. Archdiocese of Phila.</u>, 77 Pa. D. & C.4th 225 (Phila. Ct. Com. Pl. 2005), <u>aff'd without published op.</u>, 918 A.2d 793 (Super. Ct. 2006) (claimed "consensual and loving relationship"); <u>cf.</u> <u>Dalrymple v. Brown</u>, 549 Pa. 217, 701 A.2d 164, 165 (1997) (claimed childhood repressed memory).

Even if Pennsylvania law provided a discovery rule, Stephens's claim would still have accrued immediately upon the battery. "Pennsylvania's formulation of the discovery rule reflects a narrow approach to determining accrual for limitations purposes and places a greater burden upon Pennsylvania plaintiffs vis-à-vis the discovery rule than most other jurisdictions." <u>Gleason v. Borough of Moosic</u>, 609 Pa. 353, 15 A.3d 479, 484 (2011) (internal quotation marks omitted). Specifically, "[t]he commencement of the limitations period is grounded on 'inquiry notice' that is tied to actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, *without the necessity of notice of the full extent of the injury . . . or precise cause*." <u>Id.</u> (internal quotation marks omitted) (emphasis added). "Where . . . reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply *as a matter of law*." <u>Id.</u> (emphasis added).

Stephens has pleaded facts showing that he had inquiry notice of his injury and its cause immediately upon the alleged battery. The reasoning Judge Conner employed with regard to Stephens's federal claims applies: "[A] reasonable person would have been alerted to culpable activity when a teenager traveled across state lines and participated in sexual and other illicit activity with an adult." JA 29; First Op. *20. Moreover, "[t]here is simply no indication that Stephens exercised any diligence in questioning the illicit sexual conduct or related injuries." JA 30; <u>id.</u> Stephens's claim accrued immediately upon the alleged battery in 2004-2006, and would have expired under Pennsylvania's two-year statute in July 2008.

Accordingly, under Pennsylvania's borrowing statute, New York's one-year statute bars Stephens's battery claim, JA 14, but even if the Pennsylvania two-year statute applied, Stephens's claim would be time-barred.

> b.    Even If There Had Been Forcible Compulsion,
>        New York's Statute of Limitations
>        for Forcible Compulsion Battery Claims
>        <u>Would Have Barred the Claim First</u>

Stephens did not plead forcible compulsion, but even if he had, his battery claim would still be barred by New York's statute of limitations.

Judge Conner rejected Stephens's claim that Pennsylvania's 12-year tolling provision for claims of childhood sexual abuse involving forcible compulsion, 42 Pa. Cons. Stat. § 5533(b)(i), could be applied alongside New York's statute of limitations. Instead, the lower court held:

[T]he court will apply the tolling provision of the state whose laws apply under the borrowing statute. See <u>Restatement (Second) of Conflict of Laws</u> § 142 cmt. f (1971) ("In applying the statutes of limitations of the state referred to in its borrowing statute, the forum will apply such local law rules of the foreign state, . . . which bear upon the question whether the foreign statutory period has run."); <u>Restatement (Second) of Conflict of Laws</u> § 142 note on cmt. f ("The majority rule is that the forum will apply the tolling provisions of the state referred to by its borrowing statute."); Unif. Conflict of Laws— Limitations Act § 3 (1982) ("If the statute of limitations of another state applies to the assertion of a claim in this State, the other state's relevant statutes and other rules of law governing tolling and accrual apply in computing the limitation period."); see also <u>Ross</u>, 766 F.2d at 828 ("[W]e note that Pennsylvania follows the Restatement approach in applying the statute of limitations of the [applicable] state.").

JA 13; <u>id.</u> at *13-14.

Accordingly, Judge Conner held that "the court will apply New York's infancy tolling provision, and not Pennsylvania's tolling provision for childhood sexual abuse." JA 14; <u>id.</u> at *16. Judge Conner then held that "[b]ecause Stephens failed to file his sexual battery claim by July 2007, or within one year after reaching the age of majority, the statute of limitations bars the action." <u>Id.</u>

Even if Stephens's battery claim were based on conduct defined under New York law as a first-degree criminal sexual act or any other forcible compulsion sex crime, the statute of limitations would be five years. N.Y. C.P.L.R. 213-c. Thus, even if the conduct occurred as late as 2006, the claim would have expired no later than 2011. New York tolls claims with statutes of limitations of three years or more. However, that rule, N.Y. C.P.L.R. 208, *only* applies when such claims would

otherwise expire *within three years* of the plaintiff turning 18 (in 2009), so the rule does not apply to Stephens. This is because the tolling rule would extend the statute of limitations only from 2006 to 2009, and the original expiration date without tolling was two years later, in 2011.

C.    Stephens's Arguments in Favor of Applying the
      <u>Pennsylvania Tolling Statute Should Be Rejected</u>

Stephens admits at 26 n.14 that his battery claim would be untimely unless Pennsylvania's 12-year tolling provision applies, and his argument that the 12-year provision applies is meritless.

1.    The Plain Language of the Borrowing Statute
      <u>Provides for Borrowing of Tolling Rules</u>

Stephens mistakenly argues that Judge Conner erred in holding that under the Pennsylvania borrowing statute, Pennsylvania's tolling provision does not apply. Before discussing the borrowing statute, Stephens quotes <u>Ross</u>, Appellant's Br. 25, but omits without notice an internal footnote that states the borrowing statute is an *exception* to the general rule that Pennsylvania courts apply the Pennsylvania statute of limitations. However, as discussed below, <u>Ross</u> actually supports the court's ruling. JA 13 n.6.

The borrowing statute provides "[t]he period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this

Commonwealth, whichever first bars the claim." 42 Pa. Cons. Stat. § 5521(b).

Contrary to Stephens's suggestion at 26, Judge Conner did not state, suggest, or imply either that New York's "period of limitation" and its tolling rules are separable—in fact, he held the very opposite—or that the Pennsylvania tolling statute would have applied if New York law had not provided for tolling.

Stephens's attempt to remove tolling from the borrowing statute's "period of limitation" was properly rejected by the court below. Stephens argues that Judge Conner ignored the "plain language" of the term "period of limitation" by holding that it encompassed tolling. Appellant's Br. 28-29. However, it is Stephens who ignores "plain language," since tolling rules help define the period within which a claim must be asserted. In other words, a period of limitation is defined not only by its duration, but by its timing, and while the statute of limitations establishes duration, tolling rules help establish timing.

None of the authorities Stephens cites supports his argument, as all are either distinguishable, inapposite, or support Clash.

William A. Graham Co., cited at Appellant's Br. 29, did not even involve interpretation of the borrowing statute, and Stephens's quote shows only that accrual, tolling, and period of limitation are related yet different concepts—*not* that determination of the applicable period of limitation under the borrowing statute requires one to ignore accrual and tolling.

Stephens's argument of *expressio unius est exclusio alterius*, Appellant's Br. 29-30, requires one to accept his mistaken conclusion that the period of limitation does not automatically encompass tolling rules. However, even if one accepts this premise, the borrowing statute requires a determination as to which state's "law" "first bars the claim." This can only be done after having applied relevant tolling and accrual rules, as no state's law can bar a claim if it has not accrued or if the period is being tolled. Thus, far from being "other matters" impliedly excluded from the borrowing statute, Appellant's Br. 29, tolling and accrual are matters necessarily included within the scope of the statute.

Stephens also argues unconvincingly at 30 that Pennsylvania's former borrowing statute encompassed tolling because it did not refer to the period of limitation and depended only on "[w]hen a cause of action has been fully barred," and that in enacting the current borrowing statute in 2002 "it was the legislature's intent to remove tolling and accrual from the scope of the 'borrowing.'"

Stephens attempts to distinguish McKenna v. Ortho Pharmaceutical Corp., 622 F.2d 657 (3d Cir. 1980), Appellant's Br. 30, in which this Court held that the former borrowing statute encompassed accrual. 622 F.2d at 660. Although Stephens implies that McKenna does not apply to the current borrowing statute, his position conflicts with four district court decisions rendered *this year*. See JA 10-11; Second Op. *10 ("In determining which state bars the claim first, the court also

42

considers the laws regarding when the statute of limitations begins to run and the applicability of any tolling provisions."); <u>Johnson v. Smithkline Beecham Corp.</u>, Civ. No. 11-5782, 2014 U.S. Dist. LEXIS 147543, at *18-19 (E.D. Pa. Oct. 16, 2014); <u>Sherfey v. Johnson & Johnson</u>, Civil Action No. 12-4162, 2014 U.S. Dist. LEXIS 79899, at *17 (E.D. Pa. June 12, 2014); <u>Frankentek Residential Systems, LLC v. Buerger</u>, No. 2:12-CV-00767, 2014 U.S. Dist. LEXIS 57046, at *15-16 (E.D. Pa. Apr. 24, 2014).

*All* of these courts held the Pennsylvania borrowing statute applies to tolling and accrual. This is because in applying the borrowing statute, one must first determine which state's "law" "first bars the claim," something that can be done *only* after applying relevant tolling and accrual rules. Stephens would have the Court apply Pennsylvania's tolling rule and New York's statute of limitations. This would defeat the purpose of Pennsylvania's borrowing statute, which is "to prevent a plaintiff who sues in Pennsylvania from obtaining greater rights than those available in the state where the cause of action arose." <u>Gwaltney</u>, 564 A.2d at 503.

2.    Stephens's Reliance on Other States' Interpretations
      of Supposedly Similar Statutes Is Misplaced

Despite all of the foregoing decisions, including one rendered by the court below and another that he cites (<u>Sherfey</u>, see Appellant's Br. 25), Stephens claims at 30 that "[t]here does not appear to be a decision in Pennsylvania addressing the language of the 'borrowing' statute for the purpose of determining whether it

43

encompasses tolling." Stephens claims "other states have addressed this question," id., but the cases he cites only provide further support for Clash.

Stephens attempts at 31-34 to analogize McKinney v. Fairchild International, Inc., 199 W. Va. 718, 487 S.E.2d 913 (1997) on the grounds that West Virginia has a borrowing statute containing similar language and the court in McKinney held that that statute does not require borrowing of tolling rules. However, in McKinney, the court specifically noted that Pennsylvania "*does* borrow the tolling provisions from other jurisdictions under 42 Pa.C.S.A. § 5521 . . . ." 487 S.E.2d at 922 (emphasis added).

The court in McKinney also cited Waldron v. Armstrong Rubber Co., 64 Mich. App. 626, 236 N.W.2d 722 (1975), in which a court interpreting Michigan's former borrowing statute, based on the Uniform Statute of Limitations on Foreign Claims Act, held that it applied to tolling. 487 S.E.2d at 921-22. The court in Waldron reasoned that "The law of a state prescribing a period of limitations necessarily incorporates the applicable tolling provisions present under that state's law." 236 N.W.2d at 727; accord Graham v. Ferguson, 593 F.2d 764, 765-66 (6th Cir. 1979).

McKinney is further distinguished for having dealt with a "savings" statute intended to "offer a remedy for the harsh effect of the statute of limitations when an action was originally timely filed but dismissed upon a ground not going to the

merits." Id. at 923. Here, no savings statute is involved, and Stephens did not timely file anywhere.

In McKinney, the court ultimately performed what Stephens admits was "a conflicts of law approach particular to West Virginia" to determine which state's tolling rules should apply. Appellant's Br. 32 n.17 (citing 487 S.E.2d at 925). However, as discussed, in Gwaltney, the court held that the Pennsylvania borrowing statute does not permit such analysis "[e]ven if Pennsylvania in fact had the most significant contacts." 564 A.2d at 503.

Even if a conflicts analysis were permitted under the borrowing statute, New York tolling rules would *still* have to apply because New York has the most significant contacts. Because this is a diversity case, Pennsylvania's choice of law rules apply. Hammersmith v. TIG Ins. Co., 480 F.3d 220, 226 (3d Cir. 2007). Pennsylvania has "essentially adopted the Restatement (Second) view commonly known as the most significant relationship test." Shields v. Consol. Rail Corp., 810 F.2d 397, 399 (3d Cir. 1987). Since New York has the most significant relationship with the alleged tort and with the parties, and the balance of contacts weighs heavily in favor of New York, New York's tolling rules would apply even under the approach taken by the court in McKinney.

New York is the place of the alleged injury and the alleged sex that caused the injury. New York's status as the place of the injury was not fortuitous, but is

45

instead alleged to have been repeatedly *chosen as the meeting place for the parties to have sex.* JA 53-54 ¶ 5 (Stephens went from his "home in Pennsylvania to New York on multiple occasions for illicit sexual acts"); ¶ 12 ("[Clash] lured [Stephens] to visit him in New York for sexual encounters"); ¶ 13 ("[T]his pattern of sexual activity between [Clash] and [Stephens] continued over a period of years."); ¶ 14 (referring to Stephens's "various trips to New York").

New York is also the only place where Stephens alleges they ever had sex. Although Pennsylvania is Stephens's domicile, Stephens admits he repeatedly left Pennsylvania to take chauffeured trips to New York for sex. JA 53-54 ¶¶ 5, 12-14. As this is an action for a personal injury alleged to have occurred in New York, *and* the balance of contacts weighs in favor of New York, Pennsylvania choice of law rules would require application of New York's tolling rules.

> a. The Oklahoma Case Stephens Cites
>    Involved a Very Different Borrowing Statute
>    <u>and Did Not Involve Tolling</u>

Stephens also cites <u>Consolidated Grain & Barge Co. v. Structural Systems, Inc.</u>, 2009 OK 14, 212 P.3d 1168 (2009), claiming that it involved an "identical 'borrowing' statute." Appellant's Br. 31 n.16. <u>Consolidated Grain</u> is inapposite because Oklahoma's borrowing statute is essentially the *opposite* of Pennsylvania's borrowing statute, and it is distinguishable because it involved the application of a rule that had no effect on the period of limitation.

Pennsylvania requires application of the period of limitation of the state the law of which "*first* bars the claim," Pa. Cons. Stat. § 5521(b) (emphasis added), but Oklahoma's statute requires application of the period of limitation of the state the law of which "**last bars the claim**." 212 P.3d at 1174 (quoting 12 O.S. Supp. 1970, § 105) (emphasis in original). As the court noted in <u>Consolidated Grain</u>, Oklahoma's statute has been "characterized . . . as a borrowing statute with the opposite effect of most borrowing statutes that select the earliest time bar." <u>Id.</u> Further, "tolling [was] not involved in" <u>Consolidated Grain</u>, <u>id.</u> at 1168, as the case involved the question of whether a statute of repose (as opposed to a statute of limitations) had to be applied under the borrowing statute. <u>Id.</u> at 1171.

D.    Stephens Mistakenly Relies on <u>Ross</u>, the Restatement,
      the Pennsylvania Statutory Construction Act,
      <u>and Various Policy Arguments</u>

At page 32 n.17 of his Brief, Stephens incorrectly cites <u>Ross</u> for the proposition that "Pennsylvania tolling rules must apply" under Pennsylvania's borrowing statute. At page 33 n.18, Stephens also misquotes the Restatement (Second) of Conflict of Laws § 142, Comment (a), making it appear as if the Restatement supports his position. Judge Conner rejected both arguments, stating:

> Stephens mistakenly relies upon <u>Ross</u> to support a distinction between the statute of limitations and its tolling provisions. (<u>See</u> Doc. 35 at 4). In <u>Ross</u>, the Third Circuit did not directly apply the borrowing statute, but nevertheless engaged in a choice-of-law analysis regarding the accrual of claims. <u>Ross</u>, 766 F.2d at 826-28. The panel first assessed the rules governing accrual for a two-year limitations period in both

Pennsylvania and the foreign state. Id. The panel then concluded that the plaintiff could not bring a cause of action in Pennsylvania and seek a longer statute of limitations based on more favorable accrual rules in the foreign state. Id. at 827-28. The Third Circuit explained that this conclusion complied with Section 142 of the Restatement (Second) Conflict of Laws, which suggests that the law of the applicable forum "also determines all matters involving the application of the statute of limitations." Id. at 828 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 142 cmt. a). "For example, the law of the forum determines whether and under what circumstances a statute of limitations can be tolled." Id. Thus, the Ross court *reinforced* the notion that the applicable statute of limitations encompasses the issues of claim accrual and tolling.

JA 13 n.6 (emphasis in original).

Stephens also mistakenly argues the Pennsylvania Statutory Construction Act, 1 Pa. Cons. Stat. § 1927, requires the Pennsylvania borrowing statute to "be interpreted and construed consistently with the same statutes in West Virginia and Oklahoma." Appellant's Br. 35. As shown, the court in McKinney expressly recognized that Pennsylvania's borrowing statute encompasses tolling. 487 S.E.2d at 922. As also shown, the Oklahoma borrowing statute is essentially the *opposite* of Pennsylvania's, and Consolidated Grain did not involve tolling, but instead a statute of repose unrelated to the period of limitation. Consol. Grain, 212 P.3d at 1168, 1174. Thus, Stephens wants this Court to follow West Virginia's interpretation of its borrowing statute, even though West Virginia itself noted that Pennsylvania had a different interpretation because of "a legislative decision to limit a plaintiff's ability to bring suit," and did not follow Pennsylvania's

interpretation of its borrowing statute. 487 S.E.2d at 922. In any event, one state's interpretation of a uniform statute is not entitled to the deference Stephens would have this Court accord to <u>McKinney</u>. <u>See</u> <u>Krafft v. Downey</u>, 68 A.3d 329, 336 (Pa. Super. Ct. 2013) (declining to adopt California's definition of "bad faith" under Uniform Trade Secrets Act where California was only state to have adopted uniform definition).

Stephens's attempt at 36-37 to rely upon what the <u>Gwaltney</u> court characterized as the "general reasons" borrowing statutes have been enacted ignores the specific purpose of Pennsylvania's borrowing statute. As for the Pennsylvania tolling statute enacted in 2002, the General Assembly *could have* expressly provided that tolling of the statute of limitations for claims of childhood sexual abuse is not subject to the borrowing statute. The fact that it did *not* do so indicates the intent not to create the exception Stephens seeks.

E.     Stephens Pleaded That He Was a "Compliant" Victim,
        <u>Not That He Was the Subject of Forcible Compulsion</u>

Under Pennsylvania law, a plaintiff has 12 years after turning 18 to bring a claim for "childhood sexual abuse" that occurred in Pennsylvania and involved "forcible compulsion" or the "threat of forcible compulsion which would prevent resistance by a person of reasonable resolution." 42 Pa. Cons. Stat. § 5533(b)(i). Stephens did *not* plead forcible compulsion or the threat thereof, so even if

Pennsylvania tolling rules were to apply, which they do not, the 12-year tolling statute would not apply.

1.    Even If Pennsylvania's Tolling Rules Applied,
       Under New York Substantive Law,
       There Was No "Forcible Compulsion"

Stephens's claim is time-barred under New York's one-year statute of limitations for battery, so the Court need go no further. Stephens seeks application of Pennsylvania's 12-year statute for claims of childhood sexual abuse, but New York's *substantive* law would apply to the battery claim, and Stephens has not pleaded facts showing forcible compulsion within the meaning of New York law.

a.    Pennsylvania Choice of Law Rules Require
       Application of New York Substantive Law

Because this is an action for a personal injury alleged to have occurred in New York, and the balance of contacts weighs in favor of New York, Pennsylvania choice of law rules would require application of New York's tolling rules under an analysis of the kind performed in McKinney and precluded by Pennsylvania's borrowing statute. The same factors would require application of New York's substantive law to Stephens's battery claim. Thus, even if Pennsylvania's tolling rules were to apply, which they would not, questions of substantive law necessary to determine which tolling rules to apply would be governed by New York law.

>    b.    The Facts Pleaded Do Not Show
>          <u>Forcible Compulsion Under New York Law</u>

New York law defines "forcible compulsion" as "to compel by either . . . a. use of physical force; or b. a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person, or in fear that he, she or another person will immediately be kidnapped." N.Y. Penal Law § 130.00(8).

Stephens's Amended Complaint, which he filed *after* the court below informed him it would "consider whether [he] sufficiently pleaded 'forcible compulsion,'" JA 34-35; First Op. *27, contains no assertion of any fact that would meet the New York standard. Instead, Stephens alleges that Clash "led [Stephens] to believe that he was interested in having a sexual relationship with [him]," "showered [him] with attention and affection," "lured [Stephens] to visit him in New York for sexual encounters," arranged for chauffeurs to drive Stephens from Pennsylvania to New York, and once gave Stephens "poppers." JA 54, ¶¶ 11, 12, 14.

Apparently recognizing that the facts pleaded do not even approach forcible compulsion, Stephens does not expressly claim that there was forcible compulsion. Instead, he conclusorily claims that "there is an issue of fact" as to forcible compulsion, and relies without explanation on "a case involving a ten-month sexual relationship between the plaintiff, a senior in high school and her band

leader." Appellant's Br. 38-39 (citing <u>Chancellor v. Pottsgrove Sch. Dist.</u>, 501 F. Supp. 2d 695 (E.D. Pa. 2007)). Stephens has not alleged that Clash used physical force or threatened him, much less threatened him so as to place him in fear of immediate death, physical injury, or kidnapping. Ultimately, Stephens fails to explain how he was in any way *compelled*, much less *forcibly compelled*, to have sex with Clash.

Stephens's reference in his Amended Complaint to his own knowing and voluntary ingestion of drugs, JA 54, ¶ 14, is irrelevant, as it would not even go to the issue of consent, much less forcible compulsion. <u>See generally</u> N.Y. Penal Law §§ 130.00(6) and 130.05(3)(c) (mental incapacitation due to influence of drugs implicated only where ingestion is without consent). Stephens ingested the "poppers" voluntarily, implicating neither force nor compulsion.

Similarly, Stephens nowhere alleges the supposed consequences of a simple refusal to have sex with Clash, except that he might not get help with his acting/modeling career, a speculative consequence that could not possibly constitute forcible compulsion.

In <u>People v. Evans</u>, 85 Misc. 2d 1088, 379 N.Y.S.2d 912 (Sup. Ct. N.Y. County 1975), <u>aff'd without op.</u>, 55 A.D.2d 858, 390 N.Y.S.2d 768 (1st Dep't 1976), the court held that even where the defendant told the complainant, who was alone with him in his apartment, "I could kill you. I could rape you," there was *no*

forcible compulsion because there was no allegation of physical force. Significantly, in light of Stephens's conclusory claims of "*de facto* custodial control," JA 56, ¶ 24, the court in <u>Evans</u> held that the statements were not threats within the meaning of forcible compulsion. The court in <u>Evans</u> found the defendant's conduct was not rape, but seduction. <u>Id.</u> at 915. Here, Stephens does not even suggest that he was ever unable to leave at will.

Stephens has also not alleged any statements that even approach those made by the defendant in <u>Evans</u>, which themselves were not considered threats. Stephens has not claimed that he had any initial unwillingness or any kind of resistance for Clash to overcome. Instead, Stephens alleges that "[f]rom their earliest conversations, [Clash] led [Stephens] to believe that he was interested in having a sexual relationship." JA 54, ¶ 11. In response, Stephens does not allege that he was opposed to having a sexual relationship, but instead alleges that he went to New York by chauffeur to have sex with Clash.

Based on the foregoing, Stephens has not sufficiently alleged under New York law that he had sex with Clash as the result of forcible compulsion.

2.    Even If Pennsylvania Substantive Law Were to Apply,
       <u>Which It Does Not, the Claim Would Still Be Time-Barred</u>

"If an individual entitled to bring a civil action arising from childhood sexual abuse is under 18 years of age at the time the cause of action accrues, the individual shall have a period of 12 years after attaining 18 years of age in which

to commence an action for damages . . . ." 42 Pa. Cons. Stat. § 5533(b)(i). However, the 12-year statute requires that "the individual bringing the civil action engaged in such activities as a result of forcible compulsion or by threat of forcible compulsion which would prevent resistance by a person of reasonable resolution." 42 Pa. Cons. Stat. § 5533(b)(ii).

Although this Court need not reach this issue, it is notable that Stephens has not alleged facts sufficient under Pennsylvania law to establish sex with Clash as having occurred by forcible compulsion or the threat of forcible compulsion which would prevent resistance by a person of reasonable resolution.

Analysis of the Amended Complaint shows that Stephens did not plead any facts that are even remotely consistent with any theory of forcible compulsion. The closest he came to doing so was his conclusory assertion that he "did not have the capacity to consent to sexual contact with [Clash] because [Stephens] was a minor." JA 55, ¶ 20. Put simply, he has not alleged compulsion, much less by force, and certainly not forcible compulsion in Pennsylvania. In the Amended Complaint, Stephens alleged that Clash "told [Stephens] he would help him with his acting career," and "to look him up on the internet," and asked him "to send him modeling pictures and information so he could pass it around to people in the industry." JA 53-54, ¶ 10. In these allegations, there is no hint of force or compulsion.

Stephens further alleged that "[f]rom their earliest conversations, [Clash] led [Stephens] to believe that he was interested in having a sexual relationship . . . ." JA 54, ¶ 11. This is another allegation that is not in the realm of forcible compulsion. Instead, it appears to be tailored to Stephens's "compliant victim" claim. Notably, despite his early and persistent belief that Clash wanted to have sex with him, Stephens chose to continue the relationship.

"[Clash] showered [Stephens] with attention and affection." JA 54, ¶ 11. If showering someone with attention and affection can be construed as forcible compulsion, there is virtually no limit to potential liability for childhood sexual abuse and other Pennsylvania torts and crimes relying on the definition of the term.

"During their telephone calls, [Clash] lured [Stephens] to visit him in New York for sexual encounters." JA 54, ¶ 12. Again, there is no allegation of forcible compulsion. In fact, Stephens alleged that Clash "lured" him to New York "*for sexual encounters*," indicating that Stephens went to New York precisely because he *wanted* to have sex with Clash, and not because he was *compelled* to do so.

Alternatively, if by the word "lured" Stephens meant that Clash enticed him to come to New York to have sex based on the promise of something else, such allegation would still not amount to forcible compulsion. Stephens *did not* allege that that is what happened, although it would not constitute forcible compulsion if he had so alleged, and Stephens *did* allege that he believed "from their earliest

conversations" that Clash wanted to have sex with him, so any implication of a "bait-and-switch" would be untenable.

"[Clash] made arrangements by telephone to send chauffeurs from New York to pick [Stephens] up in Harrisburg, Pennsylvania, and transport him to [Clash's] apartment in New York." JA 54, ¶ 12. Stephens did not allege that he was either forced or compelled to go with the chauffeurs to New York, much less that he was forcibly compelled in such a way as "would prevent resistance by a person of reasonable resolution."

"After [Stephens] arrived in New York at [Clash's] apartment, [Clash] had sexual intercourse with [Stephens] . . . ." JA 54, ¶ 13. There is no allegation that Clash forced or compelled Stephens to have sex, much less in a way that would prevent resistance by a reasonable person.

Thus, Stephens did not plead that he engaged in sex with Clash as a result of force or compulsion, much less forcible compulsion which would prevent resistance by a person of reasonable resolution, anywhere, much less in Pennsylvania, where the only acts alleged were the telephone calls and chauffeured car rides described above. As noted, if acts such as those alleged are found to constitute forcible compulsion which would prevent resistance by a reasonable person, the door would be open for unfounded allegations of not only childhood sexual abuse, but any other tort and crime which requires forcible compulsion.

The Amended Complaint shows that Stephens went to New York voluntarily, was free to leave at any time but stayed voluntarily, ingested drugs voluntarily, and had sex voluntarily in a "compliant" fashion. JA 54, ¶¶ 12-14.

As with New York law, Stephens's knowing and voluntary ingestion of drugs is unavailable as a basis for liability. 18 Pa. Cons. Stat. § 3123(a)(4).

Analysis of the case law further demonstrates that Stephens has failed to plead either forcible compulsion or the threat of forcible compulsion, much less force or threat sufficient to prevent resistance by a person of reasonable resolution.

In <u>Commonwealth v. Berkowitz</u>, 537 Pa. 143, 641 A.2d 1161 (1994), the court held that there had not been forcible compulsion where the defendant had sex with the complainant inside a locked dormitory room while she said "No." 641 A.2d at 1164. The court reasoned that, although the complainant did not consent to the sex, there was also no showing of the use or threat of force. <u>Id.</u>

Stephens does not even allege that he had sex against his will, much less that he told that to Clash. Thus, although both <u>Berkowitz</u> and the instant case involved sex without the use or threat of force, Stephens presents a much weaker argument for finding forcible compulsion. This is so because the complainant in <u>Berkowitz</u> was not "compliant" as Stephens admits he was, JA 52, 55, ¶¶ 3, 16, 17, the door in <u>Berkowitz</u> was locked, and the victim in <u>Berkowitz</u> said "No," which Stephens never even claimed to have done. The court in <u>Berkowitz</u> found no forcible

compulsion, and this Court should do so as well if it reaches this issue, which it need not do.

Chancellor, cited in Appellant's Brief at 38-39, involved a teacher-student relationship in which the teacher "held a position of authority over" the student and "exerted custodial control over" the student. The teacher had the power to discipline and supervise a person in his custody. Unlike the teacher in Chancellor, Clash neither held a position of authority over Stephens nor exerted custodial control over him. Stephens was not in the position of a student who is expected to follow the directions of his teacher, and Clash did not have authority to supervise or discipline Stephens.

Having failed to plead any facts alleging forcible compulsion, itself a dispositive omission, Stephens claims that he "*otherwise* properly alleges the elements of a claim of sexual battery." Appellant's Br. 39 (emphasis added). In support, Stephens misquotes Cooper v. Lankenau Hospital, 616 Pa. 550, 51 A.3d 183 (2012), Appellant's Br. 39, a medical battery/informed consent case that is of little relevance here. Rivera v. Puerto Rican Home Attendants Services, Inc., 930 F. Supp. 124 (S.D.N.Y. 1996), cited at Appellant's Br. 39, is also of little relevance, as, like Cooper, it did not involve a "compliant" victim.

Simply stated, Pennsylvania's borrowing statute requires that Stephens's claim be governed and barred by New York's statute of limitations. However, even

if it did not, New York substantive law would govern, and Stephens has failed to adequately plead forcible compulsion under New York law. Finally, even if Pennsylvania substantive law were to apply, Stephens has failed to adequately plead forcible compulsion, so his claim would still be barred.

<u>CONCLUSION</u>

For the reasons set forth above, the Orders entered below should be affirmed.

Dated: New York, New York Respectfully submitted,
   December 3, 2014

      LAW OFFICES OF MICHAEL G. BERGER

      By: <u>/s/ Michael G. Berger    </u>
        Michael G. Berger (MB 2349)
        *Attorneys for Defendant-Appellee*
        250 Park Avenue, Twentieth Floor
        New York, New York 10177
        (212) 983-6000
        (212) 983-6008 (fax)
        mgberger@mgberger.com

<u>COMBINED CERTIFICATIONS</u>

The undersigned hereby certifies that: (a) he is a member of the bar of this Court (L.A.R. 46.1(e)); (b) pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the foregoing brief was prepared in <u>14-Point Times New Roman</u> proportional font and contains 13,945 words and thus is in compliance with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure; (c) the text of the electronic version of the foregoing brief is identical to the text in the papers copies; and (d) Microsoft Security Essentials (antivirus definition 1.189.1270.0), a virus detection program, has been run on the electronic version of the foregoing brief and no virus was detected.

Dated: New York, New York          Respectfully submitted,
       December 3, 2014

                           LAW OFFICES OF MICHAEL G. BERGER

                           By:    <u>/s/ Michael G. Berger</u>
                                    Michael G. Berger (MB 2349)
                                    *Attorneys for Defendant-Appellee*
                                    250 Park Avenue, Twentieth Floor
                                    New York, New York 10177
                                    (212) 983-6000
                                    (212) 983-6008 (fax)
                                    mgberger@mgberger.com

Z:\Clash\Elmo\Stephens\Federal\Court Documents\Appeal\Drafts\Appellee's Brief.v9.doc

60

STATE OF NEW YORK     )                    **AFFIDAVIT OF SERVICE**
                              )    ss.:        **BY OVERNIGHT**
COUNTY OF NEW YORK   )                    **EXPRESS MAIL**

          I, Maryna Sapyelkina, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age.

          **On December 4, 2014**

deponent served the within: **Brief for Defendant-Appellee**

          **upon:**

**Herman Law**
**Stuart S. Mermelstein**
**3351 Northwest Boca Raton Boulevard**
**Boca Raton, FL 33431**
**305-931-2200**
**smermelstein@hermanlaw.com**

**Gordon & Weinberg**
**Daniel J. Tann**
**21 South 21st Street**
**Philadelphia, PA 19103**
**215-546-3131**
**djtannesq@verizon.net**

the address(es) designated by said attorney(s) for that purpose by depositing **2** true copies of same, enclosed in a postpaid properly addressed wrapper in a Post Office Official Overnight Express Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York, and via the CM/ECF Case Filing System. All counsel of record in this case are registered CM/ECF users. Filing and service were performed by direction of counsel.

Unless otherwise noted, **7** copies have been sent to the court on the same date as above for filing via Express Mail.

**Sworn to before me on December 4, 2014**

**/s/ Maria Maisonet**                    **/s/ Maryna Sapyelkina**
                                               **Maryna Sapyelkina**

          **MARIA MAISONET**
Notary Public State of New York
No. 01MA6204360
Qualified in Queens County
Commission Expires Apr. 20, 2017